**Frank Ehrenheim, by Frank J. Ehrenheim, Appellee, v. Yellow Cab Company, Appellant.**

**Gen. No. 30,228.**

1. Highways and streets—*due care of child struck by taxicab as question for jury.* Evidence in an action for damages for personal injuries to a child struck by a taxicab near a street intersection held to make the question of the due care of the child one for the jury.

2. Highways and streets—*proximate cause of injury to child by taxicab as question for jury.* Evidence in an action for damages for personal injuries to a child struck by a taxicab near a

street intersection held to make the question as to the proximate cause of the accident one for the jury.

3. HIGHWAYS AND STREETS—*sufficiency of evidence as to negligence of defendant in action for injury to child by taxicab.* Verdict in an action for damages for personal injuries to a child struck by a taxicab near a street intersection held not manifestly against the weight of the evidence on the question as to the negligence of the defendant.

4. HIGHWAYS AND STREETS—*sufficiency of evidence as to contributory negligence of child struck by taxicab.* Verdict for plaintiff in an action for damages for personal injuries to a child struck by a taxicab held not manifestly against the weight of the evidence on the question of the contributory negligence of the child.

5. DAMAGES—*excessiveness of award of $10,000 for leg fractures and other injuries to boy of nine.* The court cannot say that a verdict of $10,000 is excessive for injuries to a boy of nine years due to being struck by a taxicab, where as a result of the accident he sustained a fracture of the left femur and the right tibia and fibula, suffered a severe nervous shock, and was obliged to undergo several operations confining him in a hospital for six months, and where four years after the injury his health was still manifestly impaired as a result of the accident.

6. EVIDENCE—*judicial notice of depreciated purchasing power of money since European war.* In passing upon the contention that a verdict for personal injuries sustained in 1920, which was returned in 1924, was excessive, the court will take notice that the purchasing power of money has depreciated considerably since the last European war.

7. EVIDENCE—*admissibility of X-ray negatives of injured plaintiff in action for negligence.* Where original negatives of X-ray photographs were identified by a witness in an action for personal injuries as pictures of plaintiff's legs taken by her, and they were further identified by the surgeon in charge of plaintiff's case as the pictures he had directed to be made by the previous witness, who was the X-ray technician of the hospital in which plaintiff was treated, and no attempt was made on the trial to challenge the accuracy of the pictures or the sufficiency of their identification, their admission in evidence was warranted.

8. TRIAL—*examination by jury of X-ray negatives showing injury to plaintiff in negligence action.* It was not error, in an action for personal injuries, to permit the jury to examine the original X-ray plates showing plaintiff's injuries after their admission in evidence, neither their identification nor their accuracy having been challenged, such examination not tending to mislead the jury nor to arouse their passions and prejudices, especially

in view of the other evidence as to the nature and extent of the plaintiff's injuries.

9. HARMLESS AND PREJUDICIAL ERRORS—*delay to strike inadmissible opinion of physician as to relation between injury and subsequent physical condition.* Where in an action for personal injuries plaintiff's physician, after having testified as to plaintiff's physical condition as found in an examination four days prior to the trial, was asked for his opinion as to the relation between such condition and the accident upon which the suit was based and the injuries therein received, and was permitted, over objection, to state that such condition had been "brought about by the injury," after which the court denied a motion to strike the answer as speculative and as invading the province of the jury, but later, on a renewal of the motion during the trial, struck the answer, advising the jury of the reasons, the defendant was not so prejudiced by the delay to strike as to require a reversal of the judgment for plaintiff, there being no dispute as to the happening of the accident or the fact of injury.

10. WITNESSES—*competency of child of twelve to testify as to facts of injury to brother four years previously.* It was not error, in an action for injuries to a boy due to being struck by a taxicab, to permit his sister to testify, although she was but eight years old at the time of the accident and but twelve at the time of the trial.

11. INSTRUCTIONS—*propriety of ruling as to competency and weight of evidence by child witness.* It was not an abuse of the discretion of the court, in an action for injuries to a boy due to being struck by a taxicab, to rule that plaintiff's sister, eight years old at the time of the accident and twelve at the time of the trial, was competent as a witness, but that the weight of her testimony was for the jury.

12. HARMLESS AND PREJUDICIAL ERRORS—*erroneous instruction which could not reasonably have affected result.* Where the record in the trial of an action is such that a criticized instruction, if erroneous, could not reasonably have affected the result of the trial, the judgment should be affirmed, notwithstanding the giving of such instruction.

13. HIGHWAYS AND STREETS—*applicability of instruction to averments of declaration in action for injury by taxicab.* An instruction in the language of Cahill's St. ch. 95a, ¶ 23, held sufficiently applicable to a count in an action for injuries due to being struck by a taxicab, alleging that defendant negligently drove its cab upon the public highway "at a speed greater than was reasonable and proper, having regard to the traffic and use of the way," etc., to warrant the giving of such instruction.

14. HARMLESS AND PREJUDICIAL ERRORS—*comments of counsel in argument in view of evidence and rulings of judge.* Comments of counsel for plaintiff in argument and during colloquy with opposing counsel during the trial of an action for personal injuries held not materially prejudicial to defendant, considering all the evidence in the case, and the ruling of the court upon objections to such remarks.

Appeal by defendant from the Superior Court of Cook county; the Hon. WELLS M. COOK, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1925. Affirmed. Opinion filed February 2, 1926.

SAMUELS, COSTELLO & GREENBERG, JOHN E. KEHOE and BUSBY, WEBER, MILLER & DONOVAN, for appellant.

LEE D. MATHIAS, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

It is sought by this appeal to reverse a judgment against defendant for $10,000, rendered after verdict by the superior court on December 20, 1924, in an action for damages for personal injuries sustained by plaintiff, a minor about 9 years old, and occasioned by his being struck and knocked down by defendant's taxicab at the southwest corner of North and Claremont avenues, Chicago, about one o'clock on the afternoon of April 23, 1920.

The judgment was entered on a second trial. The first resulted in a judgment against defendant for $8,000, which was reversed and the cause remanded (226 Ill. App. 659, opinion not published) because of the giving to the jury of an erroneous instruction and because of certain prejudicial remarks made by plaintiff's attorney.

On the second trial plaintiff was a witness in his own behalf and eight occurrence witnesses testified for him. His sister, Alice (about 8 years old at the time of the accident and who was not called as a witness on

Ehrenheim v. Yellow Cab Company, 239 Ill. App. 403.

the first trial), testified as to certain happenings shortly before the accident, and there were four other witnesses. The driver of the taxicab and one other occurrence witness testified for defendant.

In our former opinion (filed October 3, 1922, No. 27,418) we made a statement of facts which we adopt as sufficiently applicable to the evidence contained in the present transcript, as follows:

"North avenue is an east and west street, intersected at right angles by Claremont avenue. There are double street car tracks in North avenue, eastbound cars moving on the south track and westbound cars on the north track.

"The evidence is undisputed that shortly before the accident, plaintiff together with his sister, one year younger than himself, were on their way to school, going south and approaching the west crosswalk of Claremont avenue; that they stopped at the curb line near the northwest corner of the intersection of the two streets;   *   *   *   and that plaintiff left his sister and ran south on or near said crosswalk immediately in front of a westbound street car traveling in the north track and which did not stop. As to what occurred immediately after plaintiff had passed said street car the evidence is conflicting. The testimony of the driver of the cab, and that of defendant's witness, who was on the south side of the front platform of the street car, tended to show that plaintiff after passing the street car continued running across North avenue; that just as he reached a point in said street near the south curb, or reached the sidewalk south of the curb, he was struck by the *left* front corner of the cab, which had been going east at about 15 miles per hour, between the south track and the curb; and that immediately before plaintiff was struck and run over, the driver of the cab, in the effort to avoid striking him, turned the front wheels of the cab sharply to the right over the curb and onto the south sidewalk. The testimony of

some of plaintiff's witnesses tended to show that plaintiff was struck and knocked down by the *right* front corner of the cab, after he had reached the sidewalk and was standing thereon about seven feet south of the curb and about four feet west of the west curb of Claremont avenue; that at the time a large auto-truck, facing east, was standing on the eastbound track, its front end being about even with the west line of Claremont avenue, and there was a horse and wagon standing near the south curb west of Claremont avenue and a short distance in the rear of the truck; and that the cab, traveling at about 25 miles an hour, dodged in between the horse and wagon and the truck, ran over the curb and upon the sidewalk and struck plaintiff.''

Defendant's counsel first contend that the judgment should be reversed because the evidence is insufficient to show that the accident was proximately caused by the negligence of the driver of the cab, or that plaintiff at and before the time of the accident was in the exercise of due care for one of his age, experience and intelligence. Substantially the same contentions were made on the former appeal, and, in discussing them, we expressed the opinion that ''these questions were for the jury to determine.'' Upon consideration of the evidence contained in the present transcript we entertain the same opinion. And we cannot say that the verdict, on the questions of negligence and contributory negligence, is against the manifest weight of the evidence, as is also urged.

As to the contention that the verdict is excessive, it may be stated that as a result of the accident plaintiff sustained a fracture of the femur of the left leg and of the tibia and fibula of the right leg, suffered a severe nervous shock, and was obliged to undergo several operations, remaining in a hospital for about six months. He was an active, healthy boy, of good physical condition, before the accident. At the time of the second trial in November, 1924, he appeared thin, anemic and

nervous. One leg is somewhat shorter than the other. In the leg where the femur was fractured, the soft tissues had not healed up and there was a discharging sore, apparently leading from where the fracture was, which sore "has been there since the injury." His attending physician, who examined him four days before said trial, found "that he still has a small discharging sinus there." It is apparent that he suffered severe injuries, some of which are of a permanent character, and we cannot say that the damages awarded, $10,000, are too large. (*North Chicago St. R. Co. v. Anderson,* 70 Ill. App. 336, 338; *Pierson v. Lyon & Healy,* 150 Ill. App. 116, 120; *Meek v. Chicago Rys. Co.,* 183 Ill. App. 256, 266, 270; *Krug v. Walldren Express & Van Co.,* 214 Ill. App. 18, 20.) In this connection it is to be observed that the purchasing power of money has depreciated considerably since the last European War. (*Delohery v. Quinlan,* 210 Ill. App. 321, 328; *Holcomb v. Magee,* 217 Ill. App. 272, 285.)

Counsel also contend that the trial court erred in certain rulings: (a) in admitting in evidence eight original X-ray plates, offered by plaintiff; (b) in allowing Dr. Luken, plaintiff's witness, to testify what they purported to show; and (c), in allowing the jury in the box to examine the plates, which, it is claimed, had a tendency to mislead them and arouse their passions and prejudices. All of these contentions are based upon the further contention that neither the identity nor the accuracy of the plates was sufficiently shown. In *Stevens v. Illinois Cent. R. Co.,* 306 Ill. 370, 375, it is said:

"Although a skiagraph produced by X-rays cannot be verified as a true representation of the subject in the same way as a picture made by a camera, the rule in regard to the use of ordinary photographs on the trial of a cause applies to skiagraphs of the internal structure and condition of the human body taken by the aid of X-rays, and such a skiagraph, when verified

by proof that it is a true representation, is admissible in evidence. Like other photographs, they cannot be received as evidence until proper proof of their correctness and accuracy is produced. (*Chicago City Ry. Co. v. Smith,* 226 Ill. 178; *Chicago & J. Elec. Ry. Co. v. Spence,* 213 Ill. 220.) It must be established by competent evidence that the picture correctly portrays the condition it purports to represent before it has any place in the case. Some witness must be able to testify that the picture offered in evidence shows accurately what the witness saw when he looked into the body with the fluoroscope, or he must be able to say that he is skilled in the use of the X-ray machine and in taking and developing X-ray pictures, and that he took the picture offered in evidence with the body in a certain position (describing it), with a machine which he knew to be in good working condition and accurate, and that from his experience he was able to say that the picture produced by the machine was an accurate picture of the internal condition of the body. These methods of establishing the accuracy of the picture are not exclusive, but whatever method is used, its accuracy must be established before it is admitted.''

In 10 Ruling Case Law, p. 1160, sec. 360, it is said: ''To constitute a foundation for the introduction of an X-ray photograph in evidence it need not appear that it was taken by a competent person nor that the condition of the apparatus and the circumstances were such as to insure accurate pictures, where it appears by competent witnesses that it truly represents the object claimed.'' (See *Carlson v. Benton,* 66 Neb. 486, 489.) In *Jenkins v. Charleston General Hospital,* 90 W. Va. 230, 245, it is said: ''The evidence admitted, over objections of the defendant, consisted of X-ray plates taken under the general direction of the surgeon who performed the two operations mentioned, but not in his presence. As they were taken for him and by his direction, and used and identified by him, they were

properly admitted." In *Robinson v. Payne*, 99 N. J. L. 135, 143, it is said: "The rule is that if the correctness of X-ray photographs is established by the testimony of the person making them, or if they are identified by the surgeon under whose general direction and for whose use they were made, and by whom they were used in his diagnosis of the bodily injury, they are admissible in evidence."

As to the testimony in the present case concerning the X-ray plates, Sister Mary Virginia, plaintiff's witness, testified that she had resided at St. Elizabeth's hospital, Chicago, since February, 1912; that her duties there were "operating the X-ray, X-ray technician"; and that she was "X-ray technician" there in April and the succeeding months of 1920. The word "technician" is defined in Webster's Dictionary as "one skilled particularly in the technical details of his work." On being shown the plates the witness further testified in substance that she personally took all of them (original glass negatives); that three were taken on April 27, 1920, of which two (exhibits 1 and 2) were "pictures" of plaintiff's femur and one (exhibit 4) of his tibia and fibula; that two (exhibits 6 and 7) were taken on May 17, 1920, and were pictures of his femur; that one (exhibit 8) was a picture of his tibia and fibula, taken on July 7, 1920; and that the remaining two (exhibits 9 and 10) were taken on August 3, 1920, and were pictures of his femur. On plaintiff's offer all the plates were admitted in evidence. Defendant's only objection at the time was that they were "not properly identified." No objection as to their accuracy was made then, and the witness was not cross-examined. The plates were not shown to the jury until during the examination of plaintiff's witness, Dr. Luken, a physician connected with St. Elizabeth's hospital for about 18 years. He testified in substance that he saw plaintiff at the hospital on the day of the accident; that subsequently he had the X-ray pictures

taken "first of all to determine evidence of injury and, secondly, to determine the result"; and that although not present when they were taken, he could identify them as being pictures of plaintiff's legs from his knowledge of the location of plaintiff's injuries and from the hospital records. Upon his being asked what the plate (exhibit 1) showed, the question was objected to upon the ground that the plate had "not been properly identified as a true and correct representation of what it purports to be." The court, however, allowed the witness to answer that it showed " a fracture of the femur," and, over defendant's objection, further allowed the plate to be exhibited to the jury. The witness also gave testimony as to what each of the other plates showed, and, over objection, each in turn was exhibited to the jury. He testified that exhibit 2 "also shows a fracture of the femur"; exhibit 4, "fracture of the tibia and fibula"; exhibit 6, "the steel plate after it had been placed over the fracture on the femur"; exhibit 7, "another picture showing the plate intact over the fractured femur"; exhibit 8, "the bone after it had been united with the callous"; exhibit 9, "the different sections after the uniting of the bone had taken place, showing a slight overlapping"; and exhibit 10, "the bone with the cast on before the plate was introduced." In connection with the plates he also testified as to the treatments and operations performed upon plaintiff. In view of the testimony of both witnesses and the authorities above referred to, we are of the opinion that the trial court did not err in admitting the X-ray plates in evidence. They were identified by the witness Sister Mary Virginia as being pictures of plaintiff's legs taken on the days mentioned, and were further identified by Dr. Luken as being the pictures which he had directed to be taken; and, considering that they were taken personally by the "X-ray technician" of the hospital, we think that there was a sufficient prima facie showing made of the accuracy

of the plates to warrant their admission in evidence. (See *Krauss v. Ballinger*, 171 Ill. App. 534, 537). No attempt was made by defendant to overcome this showing. And it was not improper to allow the jury to examine the plates after their admission in evidence. (*Chicago & J. Elec. Ry. Co. v. Spence*, 213 Ill. 220, 224; *Robinson v. Payne, supra.*) And, in view of other evidence as to the extent of plaintiff's injuries, we fail to see how such examination by the jury tended to mislead them or to unduly arouse their passions and prejudices.

It appears that about four days before the second trial Dr. Luken examined plaintiff, and on the trial testified in detail as to plaintiff's then condition, mentioning his extreme nervousness, etc. He was asked his opinion as to what relation, if any, existed between the accident, or injury then suffered, and plaintiff's condition at the time of such examination. Over objection, he answered that such condition had been "brought about by the injury." Defendant's motion to strike out this answer, as being speculative and invading the jury's province, was denied, but later in the trial, upon a renewal of the motion, the court struck the answer from the record and advised the jury of the reasons for so doing. It is urged that this ruling, because of the delay in making it, was prejudicial to defendant. Under all the facts and circumstances disclosed we fail to see wherein defendant was so prejudiced as to require a reversal of the judgment. There was no dispute that both of plaintiff's legs were broken as the result of his being struck and knocked down by defendant's cab. (See *Hanrahan v. City of Chicago*, 289 Ill. 400, 406.) Nor do we think that the trial court erred in permitting plaintiff's sister (about 8 years old at the time of the accident and 12 years old at the time of the trial) to testify. She apparently had the necessary intelligence and the court did not abuse its discretion in ruling that she was competent as a

witness but that the credibility and weight of her testimony was for the jury to determine. (*Shannon v. Swanson*, 208 Ill. 52, 55.)

Defendant's counsel complain of the giving of the fifth instruction offered by plaintiff. The instruction is framed in the language of the statute (section 22, Motor Vehicle Act) and, following the statute, contains the concluding clause that "if the rate of speed of any such vehicle operated upon any public highway in this State, where the same passes through a closely built-up portion of any incorporated city, town or village, exceeds ten, (10) miles an hour, * * * such rate of speed shall be *prima facie* evidence that the person operating such motor vehicle is running at a rate of speed greater than is reasonable and proper, having regard to the traffic and the use of the way," etc. [Cahill's St. ch. 95a, ¶ 23]. Counsel argue in substance that, because of the use of the words "*prima facie*," the instruction would not be understood by the ordinary jury and would tend to mislead them. The giving of a similar instruction was held to be erroneous in *Stansfield v. Wood*, 231 Ill. App. 586, 590, but, under the pleadings and facts of that case, not so erroneous as to require a reversal of the judgment. In the present case we are of the opinion that the record is such that the giving of the instruction could not reasonably have affected the result of the trial, and that, notwithstanding the giving of the instruction, the judgment should be affirmed. (*Stansfield v. Wood*, 231 Ill. App. 586, 592; *People v. Weir*, 295 Ill. 268, 275; *People v. Heard*, 305 Ill. 319, 324.) Plaintiff's declaration originally consisted of three counts, but at the conclusion of his evidence he dismissed the third count and the case finally went to the jury on the two prior counts. The first charged defendant with negligently driving its cab at an excessive rate of speed over and upon the sidewalk upon which plaintiff was standing and striking him, and knocking him down, etc., and the

second charged defendant with negligently driving its cab upon the public highway ''at a speed greater than was reasonable and proper, having regard to the traffic and the use of the way,'' etc., and upon and over the sidewalk and against plaintiff, etc. We cannot agree with counsel's further contention that the instruction was not applicable to either of these counts. It was sufficiently applicable to said second count.

Defendant's counsel finally contend that the judgment should be reversed because of a certain statement made by plaintiff's attorney during the trial and because of certain prejudicial remarks made by him during his closing argument to the jury. During the trial, while plaintiff's attorney by agreement was reading to the jury the testimony of a witness for plaintiff given on the former trial from the record of that trial, a question arose whether a certain statement of the witness had been made during his cross-examination or re-direct examination, and a colloquy ensued, during which plaintiff's attorney (addressing defendant's attorney) said ''You prepared the record.'' The objection then made to the statement was overruled, whereupon, on defendant's motion, the jury was excused and defendant's attorney argued that his objection was good and that the statement should be stricken from the record, and the court ordered it stricken. Thereupon defendant's attorney moved that a juror be withdrawn and the cause continued, for the reasons that merely striking out the statement did not correct the error and that the jury would know from the statement that defendant had been defeated on the former trial. The court denied the motion, the jury was recalled and the reading of the testimony of the witness was continued. In arguing the point in their printed brief, here filed, defendant's counsel state that ''it had been necessary *for both sides* to make frequent use of the record on the former trial''; that ''there is no way of determining how well this jury or some of

its members may have been acquainted with the fact that the defeated party prepares the record to be submitted to a court of review''; and that ''it may have been a chance remark on the part of counsel and not intended to convey any improper information to the jury, but that the prejudice to defendant was none the less.'' We do not think that the fact that the statement was made requires that the judgment should be reversed and a new trial awarded. It is true that it has been held improper on a second trial for counsel to advise a jury, either directly or indirectly, which party obtained the favorable verdict on the former trial. But, as we view it, this case is not a close one on the question of defendant's liability to plaintiff (*Springfield Consolidated Ry. Co. v. Bell,* 134 Ill. App. 426, 427); and we do not think, considering all the evidence, that the statement was harmful or prejudicial to defendant in any material degree. (*Chicago Union Traction Co. v. Lawrence,* 211 Ill. 373, 378; *Chicago & A. R. Co. v. Dillon,* 123 Ill. 570, 578.) And we are of the same opinion concerning the remarks complained of, made by plaintiff's attorney in his closing argument. The remarks had some basis in the testimony of plaintiff's witness, Dr. Luken, but not to the extent as made. However, by reason of the statements of defendant's attorney, made in connection with his objections to the several remarks, and the court's rulings on the objections, we think that any possible prejudicial error in the argument was removed. (*Delohery v. Quinlan,* 210 Ill. App. 321, 328.)

Our conclusion is that the judgment of the superior court should be affirmed and it is so ordered.

*Affirmed.*

BARNES, P. J., and FITCH, J., concur.