Audrey Leideck, Appellee, v. City of Chicago and Ray Demmett, Defendants, on Appeal of City of Chicago, Appellant.

Gen. No. 32,396.

Opinion filed May 2, 1928.

SAMUEL A. ETTELSON, Corporation Counsel, and WILLIAM D. SALTIEL, City Attorney, for appellant;

ARTHUR DONOGHUE and CHARLES M. MCDONNELL, Assistant City Attorneys, and Roy S. GASKILL, Assistant Corporation Counsel, of counsel.

E. LESLIE COLE and CHARLES C. SPENCER, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

This is an action on the case brought by the plaintiff against the defendant City of Chicago for injuries which she sustained in an accident by being run into and injured by an automobile owned and operated by the City of Chicago, by its servant, Ray Demmett.

The accident occurred on June 4, 1924, when the plaintiff was a minor. However, since that time she has attained her majority, and the cause was prosecuted to judgment in her own name.

The suit originally was against the city and its servant, Ray Demmett, but as to Ray Demmett, on motion of plaintiff, the action was discontinued.

There was a trial before court and jury and a verdict in favor of plaintiff and against the city in the sum of $15,000. On defendant's motion for a new trial there was remitted from the verdict $3,000. After the remittitur motions for a new trial and in arrest of judgment made by defendant were overruled and a judgment on the verdict, less the remittitur, for $12,000 was entered against defendant. The record is now before this court for review on the appeal of defendant.

The declaration, as originally filed, consisted of eight counts. On motion of plaintiff leave was given to withdraw the sixth, seventh and eighth counts of the declaration.

The first count charges that the City of Chicago carelessly, negligently, etc., operated, moved and controlled its automobile, by its servant and agent, whereby and

by means whereof said automobile was so driven and propelled by the defendant by its servant and agent that it was carelessly and negligently moved, driven and thrown with great force and violence to and upon the body of the plaintiff.

The second count is similar with the added averment that the plaintiff at the time of the occurrence in question was exercising due care and caution for her own safety.

The third count varies from the second in averring that the automobile of the city was driven with great force and violence without any warning against the body of the plaintiff.

The fourth count is a charge of general negligence by Ray Demmett, the servant of defendant, and the fifth count adds to the general charge of negligence that the servant of defendant drove the automobile at a high rate of speed upon and against the body of plaintiff, by reason whereof she was thrown to and upon the ground and greatly hurt, wounded and injured, and her eyes, head, arms, legs, and body were severely bruised, wounded and crushed and the nerves and nervous system of plaintiff were greatly and permanently impaired, and her spine and spinal column, shoulders, knees, ankles and hips were severely and permanently injured and she suffered great external and internal injuries and was otherwise greatly and severely wounded and injured.

To the declaration as thus composed defendant interposed pleas of not guilty and nonownership of the automobile.

Defendant assigns and argues for reversal:

(1) That the verdict and judgment are against the manifest weight of the evidence;

(2) Error in admitting improper, incompetent and irrelevant evidence on behalf of plaintiff against the objection of defendant;

(3) That the damages assessed are excessive; and

(4) Error in giving to the jury at the instance of plaintiff instructions numbers 8 and 9.

The servant of the city, Ray Demmett, was examined as a witness both for the plaintiff and defendant, and his testimony conclusively proves, that he was the servant of the defendant at the time of the accident, in charge of its automobile and engaged in and about the business of the city at the time of the accident. Consequently we will pay no further attention to the question of ownership and control of the automobile which injured the plaintiff, holding that such ownership and control is undisputably proven by the testimony of Demmett, the city's servant at the time operating the automobile.

At the time of the injury plaintiff was a school girl 16 years of age and was on her way to the Calhoun school for the morning session. She was walking in an easterly direction on Washington boulevard near the southeast corner of that boulevard and Francisco avenue. Plaintiff testified that she remembered when she was struck. She had placed one foot on the sidewalk at the foregoing corner. While the rate of speed at which the automobile was driven at the time of the accident is in conflict, it appears that defendant's servant did not have, as he should have had, sufficient control of the automobile at the crossing where the plaintiff was injured, to have observed her in time to have prevented the accident.

The jury might reasonably find from the evidence that just prior to the accident three automobiles were being driven close together, going in an easterly direction on Washington boulevard; that defendant's automobile was the last of the three; that when about half way between Sacramento and Francisco avenues defendant's automobile was driven past the second of the other two automobiles on its left-hand side, then between the two automobiles and past the first thereof on the wrong or right-hand side across Francisco ave-

nue, and the plaintiff was struck just as she was raising her foot to step on the sidewalk on the south side of the street; that defendant's automobile was driven past the other two automobiles and between them and across Francisco avenue at an excessive rate of speed, some witnesses testifying that it went from 30 to 35 miles an hour, and others, on behalf of defendant, that it was not going to exceed 20 miles an hour, and that after the plaintiff was struck by defendant's automobile she was dragged a distance of more than 50 feet; and further, that as a result of the accident plaintiff sustained large contused abrasions on the left side of the face, temple, cheek and chin and an incised wound on the chest over the sternum, several large contused abrasions on the right leg, hip and ankle on the external side, a deep contused puncture wound on the inner side of the right ankle, that wound being infected; that the left arm at the wrist and left elbow was likewise abrased and infected; that she suffers from tenderness over the spine of the last rib over the coccyx, contusion on the right side of her head about two inches above the ear, and contusion on the left side of her head; that within six weeks after the accident the wounds were nearly healed and her condition somewhat improved, but that plaintiff's mental condition is impaired; and while there is some contention as to whether the mental condition is properly attributable to the accident, the medical attendants of plaintiff testified that such mental condition is attributable to the accident.

An examination of the evidence convinces us that the verdict is amply sustained as to the negligence of the servant of the city in charge of its automobile when the accident occurred. Even the evidence of the driver himself condemns his driving as negligent, tending to recklessness. The manner in which he drove the automobile, as above recited, was negligent and in utter disregard of the rights of pedestrians upon the

crossing where the accident occurred. The testimony
as to the negligent driving of defendant's automobile
was supported by the testimony of two disinterested
witnesses, one Feldman and one Tennison, who were
driving cars in the same direction in which the defend-
ant's car was being driven by its servant Demmett. In
passing the Tennison car defendant's servant did so
on the right-hand side, when he should have passed
it on the left as provided in Cahill's St. ch. 95a, ¶ 41;
that according to their testimony he was going at a
rate of speed between 30 and 35 miles an hour. That
with the exercise of the slightest degree of care Dem-
mett could have avoided striking the plaintiff, for when
he struck her she was in the act of putting her foot
upon the curb.

Demmett drove defendant's automobile at the time
of the accident in utter disregard of the rights of
pedestrians upon the crossing, a place where pedes-
trians had a right to be. It is evident that an impartial
jury could not have done otherwise than to find from
the evidence that the driving of Demmett was negli-
gent. The argument of the city that the verdict was
contrary to the greater weight of the evidence finds no
support in the record, and there is no evidence in the
record tending to show that plaintiff was not in the
exercise of ordinary care for her own safety at and
immediately prior to the time of the accident.

It is defendant's contention that a question asked
Dr. A. V. Allen, the attending physician of plaintiff,
was erroneous. The question was: "Q. From your
observation of this girl, including your treatment of
her since the time you treated her in June, 1924, down
to the present time, what have you observed, or what
opinion have you formed in regard to her mental con-
dition?" The question was pertinent and proper.
The mental condition of plaintiff was in evidence, and
no one was better able to give an opinion regarding
her mental condition than Dr. Allen, her attending

physician. Dr. Allen had wide experience in treating mental cases for many years, and was abundantly qualified to give evidence on that subject, particularly bearing in mind the fact that he was her medical advisor and treated her from the time of the accident to the date of the trial.

We find no other objection made to any other testimony given upon the trial, and therefore the objections now made in this court are not well taken.

On the question of the claimed excessiveness of the damages awarded, there is a contradiction in the evidence of the witnesses testifying pro and con as to the mental condition of plaintiff, and as to whether or not such mental condition existed prior to the accident, or that it occurred subsequent thereto, and is attributable to the accident. So far as the physical injuries of the plaintiff are concerned, they are of a very serious nature as appears from the recitation of such injuries heretofore in this opinion.

Dr. Allen testified that she was confined to her bed for six weeks; that since the accident she has lost weight and has a rapid heart; that she is hard of hearing and that her mental condition is impaired; that a year before the trial such mental condition at times was bad, and that before the accident her mental condition was fairly good.

Dr. Krome supported the foregoing testimony of Dr. Allen in every material particular, and he also gave it as his opinion that the accident was sufficient cause for plaintiff's mental condition and that such mental condition was permanent.

Dr. Adams, a specialist on nervous diseases, who examined plaintiff just before the trial, testified that he found that plaintiff was in a badly erotic condition as evidenced by marked exaggeration of her reflexes; she was unstable mentally; that she was very emotional, crying easily; that he found some angulation at the fourth lumbar vertebrae and some curvature of the

lumbar spine. Dr. Adams testified: "I have an opinion as to her mentality at the time I examined her. I would· call it very abnormal. I mean that her mind is not functioning right; that she is—I do not like to say this, but bordering on a lost mind and dementia."

This medical testimony was supported by the testimony of lay witnesses, including her father, two sisters, an aunt, ·and several neighbors. Some of these witnesses testified that plaintiff prior to the accident was a strong, healthy girl and that since that event she was nervous and irritable and lacks ambition.

The only medical evidence introduced by defendant was that of Dr. Samuel Brock, who testified hypothetically. The only observation he had of plaintiff was as he sat in the court room for a short time, and he concluded that plaintiff's then mental condition was not attributable to the accident.

The only testimony which in any way may be said to be in contradiction of the testimony regarding plaintiff's mental condition before the accident is that of a teacher, Martha J. Mellon, who was teaching in the Calhoun school which plaintiff attended. Miss Mellon taught plaintiff one full year, and as she said "possibly part of another" before June, 1924. She knew the family well and at the time of the death of plaintiff's mother, she went to the home. She testified that plaintiff always appeared to her to be nervous and seemed to be excited over the least little thing. When she could not get her lessons she would cry; that she said one time that it was difficult for her to concentrate upon her work; that she read in a little excited way; that she "never was able to do anything with numberwork"; that she could talk quite well, but did not read or figure as one ought at her then age, and that she was not very good in geography or history; that if plaintiff was conversing with her outside of school at at intermissions she seemed very capable and conversant particularly on musical subjects "and such as that." That was her

gift to be able to play the piano without any notes. ''I think that is the one thing I found her capable of doing, and we let her play the piano down on the first floor very often in the marching of the pupils, and I think that is about the only thing I ever knew her able to do.'' In class work she was listless and questions often had to be repeated to her.

On cross-examination this witness testified that her testimony regarding plaintiff related to matters which occurred in the Calhoun school four or five years before the trial.

Mrs. Winnie Wynn, the aunt of the plaintiff, testified inter alia that plaintiff had to be watched all the time; that she was moody; ''that prior to the accident she was a bright and healthy girl, but now sits and cries and picks herself. You can't talk to her. Sometimes you can and sometimes you can't. She cries and carries on and wants to know if she is going to die.'' Before the accident she would wash and iron and clean and take care of her little sisters, did her share of the housework; that since the accident she would not do anything, that she just sits and picks herself, twists her hands and legs; that is all she does, that she doesn't do anything at all, all the time, all day long.

We think that the jury might well find, from all of the evidence regarding plaintiff's mental condition, that it was as testified to by her medical attendants and witnesses, attributable to the accident in question.

The jury's verdict was $15,000 and on the motion for a new trial a remittitur of $3,000 therefrom was entered, and a judgment entered for $12,000. All the evidence considered regarding plaintiff's physical injuries and her mental condition attributable to the accident, we are unable to say that the amount of the verdict is excessive compensation for such injuries. It was the particular province of the jury to determine the amount to be awarded plaintiff, and we find nothing in the record which would lead us to believe that their

verdict was the result of passion or prejudice, or that the amount of the judgment is more than compensation to plaintiff for the injuries she sustained as the result of the negligent conduct of defendant's servant Demmett.

Defendant contends that instructions Nos. 8 and 9 should not have been given. Instruction No. 8 reads:

"The statute of the State of Illinois provides that any person operating a motor vehicle on a public highway, shall, on overtaking any other vehicle, pass on the left side thereof."

The instruction is a partial recital of section 40 of the Motor Vehicle Act, Cahill's St. ch. 95a, ¶ 41. The instruction certainly was pertinent because it was in evidence that Demmett passed to the right of the Tennison car when he should have passed to the left. It is also argued that the instruction is not based on any count in the declaration. It would be proper to give such an instruction where the declaration charges negligence generally, as several of the counts in the declaration in the instant case do. That was the negligent driving of the car, because it was in violation of the method prescribed by the statute. Furthermore it was not necessary to plead the statute, but only facts which brought the violation counted upon within the statute. *Chicago & A. R. Co. v. Dillon,* 123 Ill. 570.

Instruction No. 9 reads:

"The statute of the State of Illinois, in force at the time of the happening of the accident in question, provided as follows:

"No person shall drive a motor vehicle designed and used for the carrying of not more than seven persons upon any public highway in this state at a speed greater than is reasonable and proper having regard to the traffic and the use of the way or so as to endanger the life or limb or injure the property of any person. If the rate of speed of any such motor vehicle operated upon any public highway in this state where the same

passes through the closely built up business portions of any incorporated city, town or village exceeds ten (10) miles an hour, or if the rate of speed of any such motor vehicle operated on any public highway in this state where the same passes through the residence portion of any incorporated city, town or village exceeds fifteen (15) miles an hour, such rates of speed shall be *prima facie* evidence that the person operating such motor vehicle is running at a rate of speed greater than is reasonable and proper having regard to the traffic and use of the way or so as to endanger the life or limb or injure the property of any person.''

Counts four and five of the declaration charge excessive speed. Therefore this recitation of the statute, Cahill's St. ch. 95a, ¶ 23, to the jury is in accord with the averments of the declaration and a proper subject matter for the jury's consideration. The statute would be admissible also under any count charging general negligence. The statute defines in terms as to what is excessive speed under certain conditions, such as passing through crowded, built-up business portions and residence portions of the city. A like instruction in *Morrison v. Flowers,* 308 Ill. 189, which recited a portion of section 22 of the Motor Vehicle Act, Cahill's St. ch. 95a, ¶ 23, the court held was properly given.

In *Chicago, B. & Q. R. Co. v. Haggerty,* 67 Ill. 113, the court said:

''Still, the instruction in this respect was given in the language of the statute, and we could hardly pronounce to be error the laying down the law in the words of the law itself. Had defendant's counsel been apprehensive that the jury might be misled by the instruction as to the character of the presumption, he might have asked, on his part, an explanatory instruction to the effect that the presumption was not a conclusive but only a prima facie one.'' *Town of Fox v.*

*Town of Kendall,* 97 Ill. 72; *Duncan v. People,* 134 Ill. 110; *Kessler v. Washburn,* 157 Ill. App. 532.

In the *Kessler* case, *supra,* the court held that an instruction given in the language of the act was proper. (*Ward v. Meredith,* 220 Ill. 66.) In the *Ward* case, the court said:

"We have held in many cases that no error is committed by giving an instruction in the substantial language of a statute; that the instruction must be regarded as sufficient when it lays down a rule in the words of the law itself." (*Hartje v. Moxley,* 235 Ill. 164.)

Had defendant's counsel been apprehensive as in the case of *Chicago, B. & Q. R. Co. v. Haggerty, supra,* he might have given an instruction as therein indicated. This he failed to do and furthermore, if it should be held here as in *Harris v. Piggly Wiggly Stores,* 236 Ill. App. 392, that the instruction should not have been given, then following *Stansfield v. Wood,* 231 Ill. App. 586, the giving of the instruction would not be reversible error where the evidence in the case was as in the instant case so conclusive of negligence that the giving of the same could not have misled the jury to a wrong conclusion upon the facts. And as held in the *Stansfield* case, *supra,* we hold here that the giving of the instruction was not reversible error as applied to the facts in this case.

Criticism of instruction No. 9 seems to revolve about the term "prima facie" as used in the statute. In *Ehrenheim v. Yellow Cab Co.,* 239 Ill. App. 403, the court used this language:

"Counsel argue in substance that, because of the use of the words 'prima facie' the instruction would not be understood by the ordinary jury and would tend to mislead them. The giving of a similar instruction was held to be erroneous in *Stansfield v. Wood,* 231 Ill. App. 586, 590, but, under the pleadings and facts of that case, not so erroneous as to require a reversal

of the judgment. In the present case we are of the opinion that the record is such that the giving of the instruction could not reasonably have affected the result of the trial, and that, notwithstanding the giving of the instruction, the judgment should be affirmed.''

The foregoing language is equally applicable to the instant case.

In Webster's New International Dictionary, "prima facie" is defined as "evidence sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted."

It is the opinion of this court that the jurors were not puzzled about the interpretation of those two words, and that their verdict so evidenced.

Section 18 of the constitution of 1870 provides that "all laws of the State of Illinois, and all official writings, and the executive, legislative, and judicial proceedings shall be conducted, preserved and published in no other than the English language." By the Act of 1923, section 177, chapter 127, Cahill's St. ch. 17b, ¶ 8, the legislature changed "English language" to "American language," which in legal effect and intendment is the same thing.

The expression "prima facie" has been regarded as English for many centuries. Originally they were Latin and so were many of our present English words. In volume 7, p. 1357, entitled "A New English Dictionary on Historical Principles," edited by Sir James A. H. Murray, published at Oxford in 1909, it is stated that many quotations from English writers contain the expression "prima facie," going back as far as the year 1420. This would tend to make the expression "prima facie" a part of the English language for 500 years, and we think that it being so generally used may be so considered, and as one of the qualifications for a juror is that he be "well informed and understand the English language" we will assume that the jurors in the instant case were so qualified, and therefore

well understood the meaning of the expression "prima facie." Such expression is oftentimes used in instructions and never yet, so far as we are advised, has been held improper or erroneous by the Supreme Court.

Being unable to discover any reversible error in the record, the judgment of the superior court is affirmed.

*Affirmed.*

TAYLOR, P. J., and WILSON, J., concur.