## Joe F. Johnson, Appellee, v. Wasson Coal Company, Appellant.

1. MASTER AND SERVANT—*when assumed risk.* Assumed risk is a question for the jury where the evidence is at all contradictory.

2. MINES AND MINERS—*evidence.* In an action for injuries received by a mine driver from the kick of a mule, it is not error to refuse peremptory instructions or a motion for a new trial in behalf of defendant on the ground of assumed risk where the evidence shows that the mule was vicious, but that the plaintiff was not so notified, and it is conflicting as to whether the mule ever kicked at plaintiff and whether plaintiff knew that he sometimes kicked.

3. NEW TRIAL—*misconduct of jury.* It is not error to refuse to set aside a verdict for plaintiff in an action by a mine driver for injuries, though the affidavit alleges that the jury, during the intermissions of the trial, mingled with miners who were excited over a mine accident a few days before the trial in which many were killed, but no injury to the defendant is shown, or that the action at bar or the accident were discussed by the jurors and miners on the streets.

4. EVIDENCE—*exclusion.* Failure to exclude evidence is not error where it was agreed and so stated to the jury that the evidence should be excluded and an instruction to that effect was promised but overlooked, since the defendant could easily have asked for and obtained such instruction.

5. TRIAL—*exhibit of injured limbs.* It is not error to permit plaintiff to exhibit his injured limbs to the jury, under directions of the attorneys not to move them.

6. DAMAGES—*evidence.* When physicians state the entire amount of a hospital bill and in an attempt to separate the doctors' charges from the total, estimate them at about a certain sum, it cannot be objected that they are permitted to approximate the value of the medical attendance.

7.  DAMAGES—*when not excessive.*  $5,000 is not excessive when it appears that plaintiff was confined to a hospital for eight months, and suffered a great deal, that the flesh of one leg was torn open to the bone, and was left very weak, and that the other leg was broken, the calf ground into a pulp, after two years an incurable ulcer remains, the muscles are small, out of shape and grown to the bone, and the ankle is stiff.

8.  DAMAGES—*instructions.*  An instruction, "And if you find for him such sums as in the judgment of the jury under the evidence and instructions of the court in this case will be a fair compensation for the injuries he has sustained or will sustain if any, so far as such damages or injuries, if any, are claimed and alleged in the declaration" is proper.

9:  MINES AND MINERS—*instructions.*  In an action for injuries received by a mine driver from the kick of a mule, where the question was whether the mule was a vicious and kicking mule, an instruction is correctly refused which omits such elements, but provides that plaintiff cannot recover if he knew or had good reason to believe that the mule was at times unruly.

10.  MINES AND MINERS—*instructions.*  An instruction is correctly refused in an action by one injured when kicked by a mule he was driving, where it provides that no recovery can be had, unless it is proved that he did not know the conditions of the mule and did not have an equal opportunity with the defendant to know and find out the character and tendency of the mule.

11.  MINES AND MINERS—*duty to warn of habits of mule.*  That a mule kicked at the time complained of, without complying with his previous custom of first looking back, will not excuse a failure on the part of the master to warn of his vicious propensities.

Appeal from the Circuit Court of Saline county; the Hon. A. W. LEWIS, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed October 7, 1912. Rehearing denied November 9, 1912. *Certiorari* denied by Supreme Court (making opinion final).

M. S. WHITLEY, for appellant; MASTIN & SHERLOCK, of counsel.

H. ROBERT FOWLER and JOHN L. THOMPSON, for appellee.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

Appellee obtained judgment against the appellant

in the trial court for five thousand dollars, and it is sought by this appeal to reverse such judgment.

The appellee first began work in appellant's mine in the fall of 1909, and for a short time was engaged in driving mules. In December he quit work for appellant and sought employment elsewhere but returned again and began work for appellant in January, 1910. Upon his return he was employed as a driver and directed to work a "spike team," consisting of two mules, one in advance of the other. The rear mule was named "Billy" and the lead mule named "Barney." After appellee had been at work driving this team for fifteen or sixteen days, and on February 14, 1910, he was pulling a trip of loaded cars up grade and had just reached the top of the grade, one of the cars having passed over the grade, when the mule "Billy," without warning, kicked him, knocked him off of the car and the car wheel struck his left leg just above the ankle, making a very bad wound; the bone of the right leg was broken about midway between the knee and the ankle, and the calf of this leg was literally ground into pulp and left hanging in strings from the bones, leaving an ulcer; and appellee, according to the testimony of several witnesses, is permanently injured and unable to perform manual labor. So far as disclosed by the evidence, this was the first time that the mule had kicked at the appellee, and the evidence tended to show that the appellee did not know of the vicious disposition or that he was in the habit of kicking. The evidence discloses that the mule at times was vicious, and as some of the witnesses expressed it, when he was mad he would kick at the drivers or butt at them and they had to get out of his way to avoid being injured. The evidence further discloses that the vicious disposition of this mule was well known to the appellant; the mine manager Evans, and the boss driver Mamond both admit that they knew Billy was a kicking mule. At the time appellee was employed to drive this mule

he says he knew nothing about the disposition of the mule, and it is admitted by the mine manager that he did not inform him of the disposition of the mule to kick at times.

It further appears from the evidence that the appellee was a good driver, kind and gentle to his team, but that the team had a few times balked while he was driving it, and on such occasions he cut the trip in two and, as he says, got along without any trouble.

The declaration in this case consisted of one count, averring that it was the duty of the defendant to exercise reasonable care to furnish the plaintiff with a reasonably safe mule; that the defendant wholly disregarded its duty in that behalf and negligently and carelessly ordered and directed the plaintiff to drive a vicious and kicking mule. Plaintiff further avers that he had been driving said mule about twenty-five days up to and before the 14th of February, 1910; that he was wholly unacquainted with and had no knowledge or notice of the dangerous habits of the mule; that the defendant did know that the mule was bad about kicking, or could have known of the same by the use of due care and caution to know that fact; that while the plaintiff was driving the mule, with one mule in front as a "spike team," using due care and caution for his own safety, the hind mule kicked him in the left side and knocked him off of the car and across the rail of the track in front of the car, injuring him, etc. To this defendant filed a plea of not guilty. At the conclusion of the plaintiff's evidence, and at the conclusion of all of the evidence the defendant asked an instruction directing the jury to find a verdict of not guilty, but these instructions were refused and the appellant claims that the court erred in refusing them, upon the ground that this was an assumed risk and being so the appellee was not entitled to recover.

It is maintained by counsel for appellant that as the evidence on behalf of appellee showed that while the animal was some times and under some circum-

stances inclined to kick, yet these inclinations were indicated by something immediately preceding such acts, and that at the time of the accident none of these conditions were present or indicated by the mule and that it was not in line with the past conduct and habits of the animal, and that so far as any tendency or viciousness that the mule had shown to any person, accustomed to its habits, that they were totally different from anything here exhibited, and hence that the defendant admits agents could not possibly have had any more information on this subject than the plaintiff himself. It is not denied by counsel for appellant but that the mule was of a vicious disposition and often kicked at the drivers, but it is said that so far as appears from the evidence that he always looked back before he kicked, and that because the mule kicked on this occasion without looking back that the plaintiff knew as much about that mode of kicking as the defendant. We are unable to see how this would affect the question here involved, for if the mule was a kicking mule, and the appellant knew that fact, then when he employed appellee he should have so advised him; or if he knew the disposition of the mule was to look back before he kicked, he should have advised him of that also, and then the appellee could have been upon his guard; he did not advise him of either; the evidence of several witnesses discloses that he was a bad kicking mule, at times kicking out of the harness, butting the drivers and had a bad disposition when mad. Robert Humphrey, one of the mule drivers, says he kicked at him more than a half a dozen times. Andy Kish says that he was a good mule at times and at other times he would become unruly, and that he would kick and butt, and that he had tried to kick him many times. John Mamond, the boss driver, says he would kick at the driver or any one. John Smith says he kicked at him several times, and if you tried to pass him he would knock you over with his head and when mad would kick

loose from the trip and run to the bottom. Harry Evans says that he would kick and that he kicked at him and the pit boss, and that he was supposed to be a mean kicky mule and he was aware of its disposition. John Barton said he would kick without the driver whipping him and would squeal and kick. John Stradler says that for two or three weeks at times he would work good and then he would kick and butt with his head. It is quite apparent from the testimony of these witnesses that the mule Billy was of a vicious disposition, and at times tried to kick and hurt the drivers, and that this was known to the appellant's agents at the time they employed appellee, and yet they admit that they did not advise the appellee of the disposition of the mule to kick. The only question left to determine is as to whether or not the appellee assumed the risk, or did appellee know of the disposition of this mule or have the same opportunity of learning the disposition as appellant. Barton says that the conduct of the mule depended on the driver; that he did not know whether he ever saw him kick when Johnson drove him or not. Later on he says he could not tell how many times he saw him kick when Johnson was driving him and says that he might have kicked at Johnson, and, he thinks, he saw him kick at Johnson while Johnson was driving him. Harry Evans says he saw the mule kick while Johnson was driving him but did not see him kick at Johnson. Johnson denies positively that he knew anything about the disposition of the mule to kick or that he ever saw him kick or that the mule ever kicked at him. It is true, on cross-examination, he was asked the question if the mule ever kicked and he said, "If he did I did not notice it." While there are some things in this testimony that might tend to show Johnson knew that the mule sometimes kicked, there is nothing in it that tends to show that he ever knew the mule kicked any one or kicked at any one or had the bad, vicious disposition of which the evi-

dence shows he was possessed; and while he worked with him fifteen or sixteen days, the evidence of some of the witnesses discloses that the mule at times, when he was kindly treated, would work for two or three weeks without having one of his kicking spells.

It is said by our Supreme Court, "On reason we are unable to perceive any distinction between directing the use of an animal that is dangerous on account of its peculiar inclination to kick under certain circumstances, even though its efforts in that regard be not particularly directed against mankind, and directing the use of an instrumentality or appliance of a mechanical nature which is dangerous to the servant." Manufacturers' Fuel Co. v. White, 228 Ill. 187.

Where the evidence is at all contradictory the question of assumed risk becomes one of fact to be determined by the jury, and under the state of the evidence in this case the verdict of the jury would be conclusive, and we do not think that the court erred in refusing the peremptory instructions, or in denying the motion for a new trial upon this ground.

The next error complained of is, that because of an accident in the O'Gara mine, located in that vicinity, a few days before the trial, and that the jury during the intermissions of the trial mingled with a large number of miners who were excited over the disaster where a great number of men were killed, and, as claimed by the affidavit, were discussing the disaster, but it no where appears from the affidavit to have actually worked an injury to the appellant or that this cause or the disaster had in any manner been discussed by any of the jurors and the miners upon the streets. If such condition existed at that time that was in any manner calculated to prejudice appellant's rights by proceeding to trial, then a motion and proper showing made would undoubtedly have postponed the trial, or on mere application to the court with suggestion of any probable risk in permitting the jury to mix with the crowd during the

trial would doubtless have resulted in keeping the jury together, under the charge of an officer, but no such applications were made and no injury having been shown to have occurred to the appellant by reason of the matters set up in the affidavit, we do not see how appellant can now complain, and there was no error in refusing to set aside the verdict upon this account.

It is next complained that because the court permitted Doctor Baker and Doctor Turner to approximate the value of their medical attendance to the plaintiff, and the failure to exclude the evidence of Doctor Nyberg, that this was error. It appears from the evidence that the appellee while being treated was taken to the hospital, controlled by these physicians, and the whole bill for medical attendance and hospital service were given in a lump sum, and in an attempt to separate the physician's bill from the total amount the doctors estimated it at about two hundred dollars, it is claimed that this was error, and the case of Turner v. Lovington Coal Company, 156 Ill. App. 60, is cited as an authority upon this point. The error complained of in that case, however, was that the physician gave the results he feared might happen to the patient, instead of testifying as to the reasonable certainty of the results that might have followed, and is an entirely different question, and the case is not in point. The failure to exclude the testimony of Doctor Nyberg grew out of an agreement made in open court, and before the jury, that his evidence should be excluded, and was so stated to the jury, and the court promised to instruct the jury to disregard it but it was overlooked. If the appellant desired any further instruction upon this question he could easily have asked for it and obtained it. We do not think this was error.

It is next contended that the court erred in permitting the appellee to exhibit his limbs to the jury under the directions of the attorneys not to move

them.   We presume the directions grew out of the decision of our court tending to hold that it is not proper for a physician to examine the injured limb before a jury and comment upon it; but the fact of the exhibition of the limbs to the jury is fully warranted by the case of the City of Lanark v. Dougherty, 153 Ill. 163.

It is next contended that two or three witnesses were asked upon cross-examination as to whether or not the mule had ever kicked during the time plaintiff was driving him, before the time of the injury, to which the court sustained objections; and that when the same witnesses were put on the stand on behalf of the appellant the court still refused to allow the questions to be answered, but no questions are pointed out that are relied upon and we do not find that serious error was committed, or that the matters sought to be proven were not elicited during the course of the trial; we observe that some such questions were asked of some of the witnesses upon cross-examination that were not proper cross-examination, and some in chief were improper, in assuming that the mule did kick the plaintiff, but we have observed nothing that we can see is prejudicial error.

It is said by counsel for appellant, but not argued, that the damages are grossly excessive.   It is true that the verdict rendered is such a one as only could be rendered where the injury is very serious.   In this case the injury shows that the appellee was confined in the hospital for about eight months and suffered a great deal; that the flesh of the left leg was torn open to the bone, and when healed left an ugly scar, and the leg very weak.   The bone of the right leg was broken, the calf of this leg literally ground into pulp, and after two years there still remains what is termed an incurable ulcer; the muscles of the calf are very small, unnatural and drawn out of shape and grown tight to the bone; the ankle stiff.   That the appellee is unable to perform manual labor and that the injury

is a permanent one and that he has now lost two years' time and suffered during the whole of this period, and while the verdict is a large one we are unable to say that the jury was not warranted in awarding this amount.

The next objection made is to appellee's first instruction, "that it attempts to define and provide against the defense of assumed risk and the proposition as there stated is neither warranted by law nor supported by the evidence in this case." We do not regard this point as well taken and think it has been disposed of by the former part of this decision.

It is then said that there is no instruction in the case that advised the jury that before the plaintiff can recover it must appear that he has proven his case by a preponderance of the evidence. The first instruction given for appellant advised the jury that as a matter of law the burden of proof is upon the plaintiff and he must prove his case as alleged in the declaration, and that if the evidence bearing upon the case is evenly balanced or if it preponderates in favor of the defendant then he cannot recover. These instructions are taken as a series and we think the jury could not be misled upon that question.

The objection to the second instruction, "That this instruction tells the jury that said instruction must come from the defendant, even if the plaintiff did know it, yet if the defendant did not tell him the defendant would still be liable;" we do not think this criticism is good for the simple reason that the instruction not only advises the jury that it was the duty of the defendant to advise the plaintiff of the viciousness of the mule, if it knew it, but that the plaintiff did not know it, and the knowledge of the defendant and want of knowledge of the plaintiff must concur before this duty was imposed.

The third instruction criticised lays down the law

properly, as we think, and we think the jury was fully advised. as to the matters that would excuse the defendant from this duty by appellant's eleventh instruction, which instruction in fact quotes the same principle of law as appellee's third instruction, and then advises the jury as to the conditions under which the defendant had fully complied with the law in that regard.

In the criticism of the fourth instruction of the appellee the appellant does not quote the whole of the sentence containing the phrase criticised. . The whole of the sentence is, "And if you find for him such sums as in the judgment of the jury, under the evidence and instructions of the court in this case, will be a fair compensation for the injuries he has sustained or will sustain, if any, so far as such damages or injuries, if any, are claimed and alleged in the declaration;" we think the jury by this instruction was limited to such sums as appeared just, under the evidence and instructions of the court, and were further limited by his claim alleged in the declaration, and that the instruction was good.

The defendant claims that the court erred in refusing to give its first and second refused instructions. The first refused instruction advised the jury that the plaintiff could not recover if he knew "or had good reason to believe that the mule was at times unruly;" the question here was, as to whether the mule was vicious and a kicking mule, and these elements are omitted by this instruction.

As to defendant's second refused instruction, the third and fourth paragraphs are misleading in this: that they simply call attention to the knowledge that Johnson may have had; in the third paragraph, that he did not know the conditions of the mule, and in the fourth paragraph, did not have equal opportunity with the defendant to know and find out the character and tendency of the mule he was driving, and concluded by saying if he failed to prove either of these

propositions the verdict should be not guilty. This instruction was very misleading. It was not the conditions of the mule or the general character or tendency of the mule that was in question, but it was as to whether or not he was a kicking mule. We think the court did right in refusing these instructions.

That the mule in question in this case was vicious, and even kicked and attempted to injure its drivers there can be no question. The knowledge possessed by the appellant and appellee as to the viciousness of this mule were questions of fact to be determined by the jury, and the jury was fully advised by the instructions that if the appellee knew of the vicious habits of the mule in question, and continued to work with him after having such knowledge, that he assumed the risk and could not recover, but that if he did not know of the vicious habits and the appellant did and failed to advise appellee, then he could recover; these questions of fact having been determined by the jury we have no right or authority to interfere with the verdict unless we can say it is manifestly against the weight of the evidence, which we are unable to do in this case, and the judgment of the Circuit Court is affirmed.

*Judgment affirmed.*