Edward Barnstable, Appellee, v. Jasper Calandro, Appellant.

Gen. No. 8,712.

Opinion filed January 16, 1933.
Rehearing denied April 5, 1933.

LESLIE J. TAYLOR, for appellant; VERNON W. FOSTER, of counsel.

HERSHEY & VOGELSANG, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Christian county, entered upon a verdict of a jury in favor of Edward Barnstable, appellee, against Jasper Calandro, appellant, in the sum of $5,000 and costs of suit.

Appellee sued appellant in an action on the case for damages to his automobile and injuries to his person which resulted from a collision between a motor truck of appellant and a Chevrolet sedan automobile of appellee. The Chevrolet car, operated by appellee, was driven into the rear of the truck of appellant.

The declaration originally consisted of one count. Six additional counts were subsequently filed, to all of which a plea of not guilty was filed. At the close of all the evidence, the trial court instructed for the appel-

lant as to the first or original count and as to the second additional count.

The first additional count charged that on January 13, 1931, Barnstable was driving an automobile on route 24, and Jasper Calandro by his agent, Donald Parks, was in possession of a Ford truck; that the appellant negligently caused his truck to be parked with the left rear wheel upon the paved portion of the roadway and the end of the body protruding for a space of eight feet over the paved portion of the highway on the right-hand side of a person driving in a westerly direction, without displaying on the rear end of said truck a light visible to persons approaching from an easterly direction; that the appellee, in the exercise of due care, without warning, drove into the truck of the appellant; that the impact destroyed the automobile of the appellee, wounded and permanently disfigured appellee, incapacitated him from attending his usual business, subjected him to pain and suffering, and that he had been compelled to pay large sums for doctors, nurses and hospital bills, and would in the future be compelled to make further expenditures to the damage of the appellee of $25,000.

The third additional count charged that the appellant, not regarding the statute, during the nighttime between the hours of one hour after sunset to sunrise, permitted his automobile to stand upon the highway without displaying a light in the rear; that the appellee operating his automobile with due care drove upon and struck the automobile of the appellant, and concluded with the same allegations as to damages to person and property.

The fourth additional count charged that the appellant, not regarding the statute, did not during the period of time of from one hour after sunset to sunrise carry a lighted lamp so situated as to throw a red light visible to persons approaching from the rear; that the

appellee exercising due care, without warning, drove his automobile against the automobile of the appellant.

The fifth additional count charged that the appellant about the hour of 6:30 p. m., the night being foggy and rainy, hindering the vision of persons driving upon the road, caused his automobile to stand parked with the left rear wheel upon the paved portion of said road, permitting the body to protrude over the pavement eight feet, and negligently failed to have upon the rear end any light visible to persons approaching from an easterly direction, the truck of the appellant standing upon the right-hand side of the road to persons traveling in a westerly direction; that the appellee so driving with due care, without warning drove upon and struck the automobile of the appellant.

The sixth additional count charged that the appellant's automobile was parked protruding out and over the paved portion of the highway on the right-hand side, without then and there by any means or method giving warning of the presence of said truck to persons approaching from an easterly direction, and that appellee with due care, without warning, drove upon and struck the automobile of the appellant.

Pleas of not guilty were filed to the declaration, and a trial had before a jury, which returned a verdict of "guilty as charged in the declaration" and assessed appellee's damages at $5,000. Motion for new trial was filed and argued. The motion was overruled and judgment entered in favor of appellee and against appellant for the sum of $5,000 and costs. Appellant has brought the record to this court by appeal for review.

The collision involved occurred on the evening of January 13, 1931, some time between 6:30 and 7 o'clock p. m., at a point on State highway route No. 24, about a mile and a half east of Taylorville.

Route 24, starting at a point about a half mile east of the scene of the collision, travels generally east and west upon a levee constructed in the river bottom and crosses the Flat Branch of the Sangamon river. After passing the bridge the road goes definitely upgrade and makes a bend to the left at an angle of about 45 degrees. The slope of this hill is about 150 to 200 yards long. The hill has a rounding crest and just before the crest is reached there is a road leading off to the north, referred to in the evidence as the ''T'' road. The road from the crest of this hill slopes abruptly to the west into another hollow.

Running along the north side of the road from the ''T'' road west just at the edge of the shoulder there is an embankment about four feet high. Extending along the road east and west for about an eighth of a mile west of the ''T'' road and from the edge of the embankment back from the road to the north there is a heavily wooded area of tall trees.

The day in question had been a rainy, murky day and during the evening there were intermittent drifts of light fog along the roadway, especially in the low lands. The night was dark and the pavement damp.

The truck of the appellant was operated by one Donald Parks, a witness at the trial. His evidence discloses that the truck developed engine trouble as he came up the curving hill from Flat Branch; that he drove it over the crest of the hill, a short way down the western slope and elected to stop the truck at that point.

The evidence definitely discloses that the truck was driven off the road at an angle of approximately 45 degrees with its front end pointed into the embankment, with the truck submerged in the background of overhanging trees and, according to the testimony of Donald Parks at the former trial of this cause, with the left rear wheel upon the pavement.

The evidence discloses that the truck was a model "A" Ford, with a special stake body upon it, which body was covered over almost entirely with a brown tarpaulin. The body of the truck extended back from the rear wheels about four feet. Two sills ran along the length of the body. The tail light of the truck was attached to the left-hand side of the left-hand sill, just back of the rear wheels and at least three feet from the end of the truck.

The driver of the truck testified that the rear light was left burning. The first persons who apparently came along after the truck had been stopped, being the witnesses Dooley and Stroble, and who were the only persons produced at the trial who testified that they were flagged by the waving of the driver's light, prior to the collision, stated that the tail light was burning when they stopped. They offered to pull the truck to town, but the driver rejected their offer and did not avail himself of the opportunity afforded by their offer to get the truck pulled off the slab.

Two other persons, witnesses Ed Denton and Dean Brewer, separately passed the parked truck earlier and prior to the arrival of appellee in his car. The only light visible to either of these gentlemen as they passed was a dim light at the front of the truck. The driver did not flag either of these gentlemen with his light.

Appellee, coming from Pana, across the Flat Branch bridge, around the curve and up the hill and over its crest on the right side of the black line and at a rate of speed of from 35 to 40 miles an hour, did not see the dark figure of the tarpaulin covered truck against the black dampness of the pavement until he was upon it. He attempted to swerve to the left, caught the left half of the rear end of the truck, the hood of his car was smashed back as the front end of the car went under the stake body and came in contact with the left

sill. The middle of his bumper hit the left wheel and tail light. The right side and front of his car was demolished, the left fender was uninjured.

Appellee testified that to the best of his judgment he was driving within two or three inches of the black line; that he didn't see anyone about the truck before the collision; that there was nothing between him and the truck to prevent his seeing the truck; that he was driving 35 or 40 miles an hour; that his car was equipped with four-wheel brakes; that on the former trial he had stated that going at that rate he could have stopped the car or at least have gotten it under control within 30 steps; that he couldn't say that he saw the truck; that an object loomed up in front and about the same instant he crashed into it; that his headlights were burning immediately before the collision; that on a dark night with his lights working he could see from 175 to 200 yards ahead; that at the point where the collision took place the concrete slab and shoulders are 35 to 40 feet wide. From the "T" road to the point of collision the road is straight. He didn't recall seeing any other cars or automobiles immediately before the collision. In reply to the question, "What if anything was there to prevent your driving to the left of this truck?" he stated, "This object shows up—the only way I can answer I didn't have time to change the course of my car to go to the left."

He was then asked, "By that you mean you didn't see the truck until you hit it?" to which he replied, "I saw it the instant before; there was an object; I didn't know whether it was a truck or a hay stack or what it might be; there was no way of telling just what it was. I was too near it to have time to figure out what it was." He stated on the trial that it was somewhat damp and foggy.

Appellant insists that appellee was guilty of contributory negligence in driving into the truck. Numer-

ous cases are cited of a somewhat similar nature, but each case is to be decided upon the facts of the particular case. Upon this question it is impossible to reconcile the variation in the testimony.

The witness Brewer, the only person testifying as to the lights, testified that the only light he saw was one at the head of the truck.

Parks agreed with the witnesses for appellee that his truck was not driven off the slab parallel to it, but that it was driven off at an angle to the northwest. He contended, however, that the body overhung the pavement only a foot. This statement was contradicted by both Brewer and Denton, who stated it overhung about eight feet. He is further contradicted on this point by his own testimony given on the former trial of this case. He testified then that the left rear wheel of his truck was on the pavement four inches.

Parks claimed he flagged every person who came along after he had stopped his truck, but the evidence of Denton and Brewer, the only persons appearing as witnesses who are known to have come along prior to the wreck other than Dooley and Stroble, were not flagged by him. Parks claimed to have attempted to flag appellee, which is inconsistent with his testimony that he was up at the engine when appellee's car hit the truck. It is inconsistent with the fact that he told the witness Nolan that he was up at the front of the engine trying to find out what the trouble was, at the time of the collision.

There was testimony tending to disclose the following facts: that Parks stopped the Calandro truck just to the west of the crest of the hill where the ground began to slope to the west. Parks claims "All I could do was to pull off the slab," but the facts are that he didn't even do that. He was on a down slope and the momentum of the truck would have carried it off if he had permitted it to. He doesn't state that the engine had stopped before he stopped the truck. He didn't

guide the truck off parallel to the slab as he could have done; he ran it off at an angle to the slab, a 45-degree angle one witness said; to the northwest, he testified himself. He left the left rear wheel on the pavement. It is argued that he did this because the shoulder was uncertain footing after a cloudy, rainy day, and he wanted one wheel on a solid footing so that he might be able to back upon the pavement and proceed if, after he had determined the cause of his engine trouble, he was able to fix it.

Brewer testified: "It was a little bit foggy and misty, misting rain to the best of my knowledge." He says when he got close "There was a dim light on the front of the truck." Appellee and Brewer in their testimony state that no red light was burning at the rear of appellant's truck. Appellee, from the crest of the hill, after passing the "T" road going north, was going down hill or incline to the place of the accident, or was sloping to the west.

The question of contributory negligence is ordinarily one of fact to be determined by the jury from all the facts and circumstances shown by the evidence. A court cannot be called upon to say to a jury that contributory negligence has been established as a matter of law, unless the conduct of the injured party has been so clearly and palpably negligent that all reasonable minds would so pronounce it without hesitation or dissent. If the question is open to a difference of opinion, the jury must pass on it. (*Toledo, St. L. & W. R. Co. v. Christy,* 111 Ill. App. 247; *Nugent v. Waters,* 266 Ill. App. 377; *Illinois Cent. R. Co. v. Anderson,* 184 Ill. 294; *Chicago & E. I. R. Co. v. O'Connor,* 119 Ill. 586.)

From all this proof we are not able to hold that appellee was guilty of contributory negligence or that the verdict was against the weight of the evidence.

Appellant presents the case of *McDermott v. Mc-Keown Transp. Co.*, 263 Ill. App. 325, as a case altogether identical upon the facts with the case at bar, in which the court held (p. 328):

"The case was tried on the theory that there was an absolute legal duty on defendant to maintain a red light on the rear of the truck, as required by the statute, Cahill's St. ch. 95a, ¶ 17, if defendant would relieve itself from liability in case one were injured on account of there being no red light, and this is the contention of plaintiff. An instruction was given in the language of the statute, that 'When upon any public highway in this State, during the period from one hour after sunset to sunrise, . . . each motor vehicle or trailer shall also exhibit at least one lighted lamp which shall be so situated as to throw a red light visible in the reverse direction.' But we think the law is not so unreasonable that there might not be circumstances which would relieve one from liability in case the rear light suddenly went out. *Toledo, Wabash & Western Ry. Co. v. Beggs,* 85 Ill. 80; *People v. Kastings,* 307 Ill. 92; *Berkovitz v. American River Gravel Co.,* 191 Cal. 195; *Yates v. Brazelton* (Cal. App.), 291 Pac. 695."

But in the view of this court driving conditions and lights in Chicago, Evanston and the Lake Shore are entirely different from such conditions on a country road, up hill and down, where there are no lights, upon a wet and dark night. In the *McDermott* case cited, the complaint was made upon instructions, as stated, which error does not occur in the case at bar. In this case appellee testified he did not see the truck until he was right upon it. The night was dark and misty. There are no proofs that appellant's driver in any manner attempted to warn or flag appellee, as he had the others. Appellee had gone to the top of the incline and was proceeding to a lower level. The truck

was covered with a brown tarpaulin, a dirt color, and, if it be true, as the jury evidently determined, that no red light was burning at the rear of the truck, or if such light was directed away from the vision of appellee by the angle of the truck, these facts—upon which there was some proof—together with the dirt embankment and overhanging trees, renders it impossible to hold as a matter of law that appellee was guilty of contributory negligence.

Appellant further contends that the court erred in not instructing the jury to find a verdict for appellant, on the ground that there was no testimony tending to show that appellant, by his servant, was guilty of negligence. With appellant's truck standing at an angle in the line of traffic over on the cement eight feet, as testified to by appellee's witnesses, or one foot, at least, as testified to by appellant's servant, the assignment of error should be overruled. There was no occasion for the truck standing in that position. The truck had been traveling on a decline and could as easily have been coasted off from the cement, or it could have been removed from the highway entirely by the men who offered to haul it to Taylorville before the accident happened; but appellant's servant declined the offered aid.

It was further assigned as error that appellant's rights were prejudiced by errors in the admission of evidence. Appellant contended that the court erred in permitting the appellee to exhibit to the jury, over the objection of the appellant, the leg which had been broken; that there was nothing about the injury which was not and could not be fully explained by the attending physician and by the appellee himself, and that he was permitted to stand out in front of the jury and to uncover his limb and demonstrate what the leg does.

The law is well settled that the determination of the question as to whether one who is injured may exhibit

the injured member to the jury is primarily in the discretion of the trial court, and it is properly exercised in any case where the personal view will aid the jury in understanding the evidence and also where there is no controversy concerning the injury or the extent of it. (*Wagner v. Chicago, R. I. & P. Ry. Co.,* 277 Ill. 114; *Chicago & A. R. Co. v. Clausen,* 173 Ill. 100.) Of like effect are the cases of *Chicago Terminal R. Co. v. Kotoski,* 199 Ill. 383; *Hunt v. Illinois Southern Ry. Co.,* 196 Ill. App. 539, and *Johnson v. Wasson Coal Co.,* 173 Ill. App. 414.

The courts have gone even further in permitting as proper more than a mere exhibition of the injured limb. They have held that on a trial of an action for personal injury to allow the witness to move the injured limb to demonstrate the extent to which freedom of movement had been impaired, was not error. (*Tindall v. Chicago & Northwestern Ry. Co.,* 200 Ill. App. 556; *C. & A. Ry. Co. v. Walker,* 217 Ill. 605; *Swalm v. City of Joliet,* 219 Ill. App. 123.)

The only evidence offered upon the question of the extent of the injury was that of the appellee and of Dr. Tankersley, one of appellee's witnesses. There was no dispute upon this point and the case of *Wagner v. Chicago, R. I. & P. Ry. Co., supra,* clearly holds that under such circumstances the exhibition of the injured member is always proper.

There was no demonstration before the jury. It is true that appellee, not in response to any question, voluntarily started to flex his leg to show the character of the injury. It would not have been proper under the cases above cited if he had been permitted to continue, but the record discloses that the court promptly sustained the objections of the appellant and advised the jury that a demonstration was not proper. There was no controversy upon this question. The exhibition of the limb was clearly proper. Objections were

promptly sustained to the part that the court considered improper and no error was committed in connection therewith.

The court held in *Wagner v. Chicago, R. I. & P. Ry. Co.*, 277 Ill. 114, 118: ''The court permitted the plaintiff to exhibit his foot to the jury, and also to exhibit the shoe which he wore at the time of the accident and to offer the shoe in evidence. Whether one who is injured may exhibit an injured member to the jury is primarily in the discretion of the trial court, and it is properly exercised in any case where the personal view will aid the jury in understanding the evidence, and that may be so where there is no controversy concerning the injury nor the extent of it, as was the fact in this case. (*Chicago and Alton Railroad Co. v. Clausen*, 173 Ill. 100.) Where, however, the only purpose and effect of an exhibition of that kind is to excite feeling rather than to enlighten the jury as to any fact or to aid in settling any disputed question of fact it should not be permitted. In this case there was not only no controversy concerning the injury nor the extent of it, as was stated at the time of the proposed exhibition, but the evident purpose was to excite in the minds of the jury pity and commiseration for the condition of the plaintiff and thereby to increase the damages. The exhibition for the purpose which the record shows was intended should not have been allowed, and if it now appeared that the damages allowed were excessive it would be necessary to reverse the judgment. In view, however, of the amount of the recovery it would seem that substantial injury did not result from what was done.'' Nothing is shown in the record to indicate that the jury were prejudiced by this proof.

Appellant further assigns error in that upon the evening of the second day of the trial, the *Daily Cou-*

*rier* of Taylorville published a front page article under leaded caps which was as follows:

"THE DAILY COURIER

"Vol. 36                    Fifteen Cents Per Week
"Taylorville, Illinois, Tuesday, January 5, 1932
"$25,000.00 DAMAGE CASE ON TRIAL

"A jury in the Circuit Court here today, heard the evidence in the case of Ed Barnstable, who filed suit against Jasper Calandro for $25,000 damages following an automobile accident on the East hard road.

"Mr. Barnstable was returning from Chicago and crashed into the back end of the Calandro truck part of which was parked on the hard road and said to have been without light.

"The case was tried at the August term of court and resulted in a hung jury.

"The case is being tried to determine the amount to be paid by the Insurance Company which carried the Calandro risk."

The matter was called to the court's attention and he personally examined all the jurors to ascertain if anyone had seen or read the article. All of the jurors, save one, stated that they had not even seen the newspaper. The one who had seen the paper stated that he had not seen the article and had not read it.

The cases cited by appellant on this point, particularly *Trohey v. Chicago City Ry. Co.,* 168 Ill. App. 1, and *West Chicago St. Ry. Co. v. Grenell,* 90 Ill. App. 30, recognize the rule that when it is shown that jurors have not read a prejudicial article in a newspaper the publication of the same is no reason for a mistrial. This rule is laid down in the case of *City of Chicago v. Dermody,* 61 Ill. 431.

It affirmatively appears that no juror had read the article in the *Daily Courier* and if such is the case it could not have affected their verdict.

It further appears in the proofs by the testimony of the witness Henry Burchfield, the reporter who wrote the article, that he had the statement, substantially as printed, from the appellant. Under all the circumstances of this occurrence, it cannot be held as error that a mistrial was denied.

Appellant assigns error in the giving of appellee's first instruction, as follows: "The court instructs the jury that the plaintiff is required to make out his case by a preponderance of the evidence to entitle him to recover, and any evidence, either circumstantial or positive, which induces belief is proper to be considered by you in determining whether or not the plaintiff has so made out his case."

He contends that this instruction does not nor does any other instruction given by appellee define of what the case of the appellee consists. The court held that the original declaration and one of the additional counts should not go to the jury. This instruction did not confine the appellee to making out his case as alleged in the counts of the declaration.

Appellant did set out in his ninth instruction a full statement of plaintiff's case. It has been held that a defendant (appellant) had the right and it was his duty, if he so desired, to offer instructions setting forth the elements necessary to be proven to support plaintiff's cause of action. (*Chicago City Ry. Co. v. Foster,* 226 Ill. 288; *Hannibal & St. J. R. Co. v. Martin,* 111 Ill. 219; *Mayzels v. Chicago City Ry. Co.,* 177 Ill. App. 534.)

Appellant further objected to the giving of appellee's third instruction, as follows: "The court instructs the jury that the law of this state requires that upon state highways upon which have been constructed paved or hard surfaced roads having two traffic lanes, any person operating or driving a vehicle shall, whenever practicable keep to the right of the

center line of the paved or hard surfaced portion, and shall have the right of way there.''

It is contended that both cars strictly adhered to this rule in the use of the highway, and that the giving of this instruction was prejudicial to the jury. We cannot agree with appellant in this contention. Appellant's car did not give appellee's car the right of way upon the pavement to the right of the black line. The fact that an instruction is a mere statement of a rule of law is not ground for reversal. (*Chicago City Ry. Co. v. Anderson*, 193 Ill. 9.)

In *Garvey v. Chicago Rys. Co.*, 339 Ill. 276, cited by appellant, the same rule is recognized. The instruction in the *Garvey* case, however, went much further than appellee's instruction and directed the attention of the jury to a part of the evidence and instructed the jury as to the bearing of this evidence on the question of the appellant's negligence. Appellee's instruction does nothing of that kind.

It is further contended by appellant that the damages awarded are grossly excessive. Appellee suffered pecuniary damages in the wrecking of his car, doctor's bills and loss of time to the amount of about $1,000. He had a leg broken just below the knee; an ankle badly twisted and strained; two bones of his left hand were broken; a cut on his head, running from his eye back, requiring 33 stitches; two other cuts on his head, each four or five inches long, and two scars on his right temple. We are not prepared to say that the amount of the damages is excessive.

Finding nothing in the record that will warrant a reversal, the verdict and judgment of the circuit court of Christian county are affirmed.

*Affirmed.*