William L. James, Appellee, v. Motor Transit Management Company, Appellant.

Gen. No. 8,486.

October term, 1930.    Heard in this court at the October term, 1930. Opinion filed January 26, 1931.

Covey & Woods, for appellant.

Harold F. Trapp, for appellee.

Mr. Justice Eldredge delivered the opinion of the court.

This is an action on the case in which the declaration consists of three counts in each of which it is alleged that plaintiff was in the exercise of due care in driving his car along the state highway known as

Route 4 between the Village of Elkhart and the City of Lincoln, said highway having a concrete surface 18 feet wide with earth shoulders on either side thereof 6 feet in width. The negligence charged in the first count in substance is that on the 19th day of September, 1929, about 2 hours after sunset and at the hour of 9 o'clock the defendant negligently permitted a large motor bus or coach to remain on and across the east lane being the west half of said concrete surfaced roadway whereby the motor vehicle of the plaintiff collided with said motor bus resulting in injuries to the plaintiff. In the second count the negligence charged is that defendant stopped one of its motor buses in violation of the statute and allowed it to stand in such position that there was not ample room for two vehicles to pass upon the concrete highway. In the third count the negligence alleged is that the defendant allowed its bus to stand upon the concrete surface without having a light upon the rear end thereof and without giving any warning or notice of the position of said bus. The jury returned a verdict assessing plaintiff's damages at the sum of $5,000.

The defendant's line of motor buses is known as the Greyhound line. On the evening in question, William E. Perkins was the driver of the particular bus in question. It was a passenger bus running from St. Louis to Chicago on a second run, taking care of the overflow from the first run. The bus arrived at Elkhart between 8 and 9 o'clock and started on its way toward Lincoln. About two miles north of Elkhart the driver discovered that he was running out of gasoline. He turned the bus off the side of the road so that the two front wheels were completely off the concrete and he testified that only the left rear wheel was setting on the pavement, and the right front wheel and the right rear wheels were on the edge of the ditch running parallel with the shoulder. There were two

green lights on the front of the car and also two headlights and the sign light. On the rear of the car there were three green marker lights and one red tail light. In the motor bus were three passengers. After the bus stopped for want of gas, the driver got out, stopped a passing car going towards Elkhart and rode in it to the Standard Oil station which was the first one he came to where he procured 15 gallons of gasoline. William Byrne who ran the gasoline station took him back to the bus with the gasoline in a motor car. When they arrived at the bus they put in the gasoline and the driver tried to start the bus but could not do so. The two men then got into Byrne's car and attempted to push the bus back on to the concrete but could not move it. Another man came by in a motor car and they again attempted to push the bus back onto the concrete using Byrne's car and the other car. The dirt on the shoulders was wet and slippery and the efforts of the two cars were unsuccessful. The driver concluded that it would be necessary to procure a wrecking car to haul the bus back onto the pavement. He consequently went back to Elkhart with Byrne and procured the witness Donnelson to proceed to the bus with a wrecking car. When the driver of the bus and Donnelson arrived at the bus they found that the plaintiff's car had run into the rear end of the bus and had become entangled therewith to such an extent that they had to attach the wrecking car to plaintiff's car to pull it away from the bus. After this was done the wrecking car hauled the bus back onto the pavement and the driver started on his way toward Chicago. There is no dispute as to the above facts. The disputed facts are as to whether there were any lights on the motor bus when the collision occurred, the portion of the rear end of the motor bus on the pavement and the condition of the weather at the time of the accident.

William L. James, plaintiff, was 66 years old and lived in Lincoln with his sister. He started from Lin-

coln about noon on the day in question for Springfield for the purpose of getting a bucket of tobacco for a man by the name of Sexton. He took with him the witness Richard Wilson. These two men spent most of the afternoon in Springfield and started back to Lincoln about 7 o'clock. He testified that it was a foggy, drizzly night and that he kept his windshield wiper in operation; that as he approached the bus he was driving about 25 miles an hour; that on account of the rain and the fog he could not see more than 30 feet ahead of his car notwithstanding that he had the full force of the headlights burning; that he did not see the bus until he was within thirty feet of it when he attempted to avoid a collision by turning to the left to go around it, and that he did not see any red light on the rear of the bus nor any lights that attracted his attention; that the bus was of a gray color with the picture of a greyhound on the side; that it was standing quartering or angling on the pavement, the left hind wheel was about eighteen inches from the black line and the two front wheels were clear over on the dirt; that his pelvic bone and breast bone were broken as was also his left wrist and he also had a cut on his right hand an inch and a half long between the two middle fingers; that he was taken to a hospital in Lincoln and attended to by a physician.

Richard Wilson testified that he rode to Springfield with the plaintiff and that on the return just before the collision the latter was driving about 25 miles per hour and that when they got within 30 feet of the bus, he said, ''Mr. James, look out there for that bus''; that he didn't see any lights on the bus; that from the instant he saw the bus until the collision occurred was about as quick as you can snap your fingers. He stated that after leaving Springfield that night he kept no lookout ahead and paid no attention to the road ahead but was looking out of the side of the car on the slab or pavement.

The witness Homer Leftwich lived in Elkhart but had been in Lincoln that day on business and was returning to Elkhart right after the accident. He testified that on approaching the motor bus from the south he first noticed it about 100 yeards ahead of him but didn't observe any lights on the bus, if there were any they were little lights up above—little blue lights up high; that he thought the head lights of the bus were burning in front but never paid any attention as to whether there were any lights on the top of the bus in front; that he didn't observe any light on the back of the bus; observed the bus 100 yards before they got to it; that the first thing that attracted his attention were the lights on the bus that were dim; made no examination as to any lights on the rear end.

T. W. McRoberts also resided in Lincoln. He in company with the witness Mrs. Judd left Lincoln about 8:30 that evening in their car to drive to Elkhart. He testified that as they approached Elkhart from the north he observed the bus when he was about 50 yards from it; that he didn't know whether there was a head light or a parking light on the front of it and didn't pay much attention to it; that he saw a light on the back of the bus across the top; saw it as he was going south and also saw it as he came north after the accident; that after passing the bus he went on south about a mile and a half and turned around north of Elkhart and came back; that when they got back he found plaintiff's car had run into the bus and there were 8 or 10 people getting them out; couldn't say what kind of lights there were on the back of the bus but there were back lights on it; that there was a blue light on the top; thought there were two kinds of lights on the bus, either blue and red or white and red; there were little lights on top of the bus; doesn't remember whether there was any light at the back of the bus where the stop light is, he didn't look. On cross-

examination he testified that he didn't recall that it was raining; the windshield wiper was not in use; that his vision through the windshield was not obstructed in any way; that coming back he was about 100 yards south of the bus when he first noticed it; recalled that there were lights of two different colors showing on the rear of the bus but didn't remember the colors exactly, they were either white and blue or white and red but there were two colors; that he saw lights on the front end of the bus as he approached it going south.

Mrs. Judd, who was in the car with the last witness, stated that when she first saw the bus she was 100 yards from it; that while passing it going south the front lights were burning and also different colored lights around the bus near the top and saw the lights around the top on the rear of the bus as they came back. On cross-examination she testified that she believed the lights were red and green and there were several of them; that she noticed these colored lights both as they came down and as they went back; that as they drove toward Elkhart and came back from the south it wasn't raining at all that she could recall; that they were not using the windshield wiper on the car didn't notice that it was misty or foggy; that she could see 100 yards ahead as they were going toward Elkhart and as they came back from Elkhart.

Haden Leftwich started from Elkhart in his coupe with a rumble seat and had with him his brother William, Albert Hartley and Thomas Stellar. William rode in the front seat with him, the other two boys rode in the rumble seat in the rear; that they started to Lincoln to get Haden's father. He could remember very little in regard to the matter. He testified that as he approached the grade north of the concrete bridge he noticed a bus on the road. (There is no evidence of the location of this bridge nor how far it was from

the bus.) He testified that he did not observe any lights upon the back of the bus nor how close the bus was to the center of the road; that he remained in Lincoln half an hour and drove back in his father's car; that on the way back he saw the bus but observed no light as they approached it going south; didn't remember of observing any light on the front of the bus; didn't remember how close the left-hand corner of the bus stood to the black line; didn't notice any light of any kind on the rear of the bus as he paid no attention toward seeing whether there were any lights on the bus or not; that as he came back toward Elkhart he had no judgment how far away he was when he fiirst saw the bus and paid no attention to the lights; paid no attention to the position of the bus on the road; paid no attention to where the wheels were, never looked; paid most attention to the scene of the wreck and to the people that were hurt and didn't know whether there were any lights on the back of the bus at that time; didn't remember whether he used any windshield wiper on his car; didn't remember whether it was raining or not.

William Leftwich, a brother of the preceding witness, testified that as they drove into Lincoln it was misting; that he didn't notice that it was raining at all; saw the bus on the hard road as they came to Lincoln; didn't remember how close they were to it before he saw it; wasn't paying any attention to it but saw a light on the back of the bus as they went past it going to Lincoln; didn't remember seeing any other lights on the bus; that going back from Lincoln he was riding with his father who was driving the car and didn't remember seeing any light in the bus nor any light on the rear of the bus; didn't notice how far plaintiff's car was to the middle of the slab; didn't know whether the front wheels of the bus were on the slab or not. On cross-examination he testified that when they passed the bus going from Elkhart to Lincoln he no-

ticed there were lights on the bus then along the rim; that the windshield on his car that time was closed and he observed this bus looking through the windshield; that on returning from Lincoln he observed the bus something like 25 or 30 yards away and saw it through the windshield which was closed.

Albert Hartley, one of the boys who rode in the rumble seat in Haden Leftwich's car, stated that he never noticed the bus north of Elkhart until they went around it and didn't observe any light on the rear of the bus and didn't notice any on the front of the bus as he didn't look back; that it was a little foggy and it sprinkled a little bit; that on his return from Lincoln going back to Elkhart he saw the bus about 50 yards before he got to it and thought there were some green lights on the rear of the bus at that time near the top. On cross-examination he testified that he saw the bus as he came north from Elkhart through the closed windshield about 50 yards before they got to it but never paid any attention to the question of lights on the bus.

Thomas Stellar, who was also sitting in the rumble seat going from Elkhart to Lincoln, testified that he noticed the bus but didn't observe it particularly; that he didn't remember whether there were any lights in the bus or not as they passed it going to Lincoln; that on the way back from Lincoln he rode in Haden Leftwich's car; that as they passed the bus going south he didn't remember whether there was a light there or not. On cross-examination he testified that as they came from Lincoln he could see the bus all right through the windshield which was closed and didn't pay any attention as to whether there were lights there or not.

All the above witnesses were produced and testified for the plaintiff and it will be observed that every one of them with the exception of the plaintiff and his companion Wilson testified that they saw the bus from 30

to 100 yards away as they approached it or in ample time to pass around it and none of them testified that their vision was in any way obscured by rain, fog or mist.

On behalf of the defendant, William E. Perkins, the driver of the bus, testified that after he discovered that his gasoline tank was empty he turned his car toward the shoulder and let it coast as far as it would go; that at the time he hailed the passing car to take him to Elkhart to get gasoline the two front headlight were burning as were also the sign light and three green marker lights in the back and a red tail light, also there were two green lights on the front of the car; that at that time there were three passengers in the car; that when the bus stopped the left hind wheel was about a foot and a half on the pavement or slab and the right rear wheel was over on the edge of the ditch just as it starts to go down; the left front wheel was right on the edge of the pavement and the right front wheel was over near the edge of the ditch; that after returning with Donnelson and the wrecking car he noticed that plaintiff's car had run into the back end of the bus and had skidded or pushed it farther out into the highway and that the tail light on the bus had been broken off. He further testified that in approaching the bus after obtaining the gasoline in Elkhart he could see it half a mile away.

William Byrne, the man who sold the gasoline to Perkins and who took him and the gasoline back to the bus, testified that on approaching the bus he could see the lights probably half a mile ahead; that when he got there the green lights on the top were burning and saw the headlights burning in front and that there were dimmers on the headlights; that the left rear wheel of the bus when he got there was a foot or a foot and a half on the slab, the right front wheel was partly in the ditch and the rear right wheel was sitting on the bank of the ditch and it was very soft; that

Perkins tried to start the bus but was unsuccessful; that they then took his car and tried to push the bus forward in order to get the right front wheel out of the hole it was in but couldn't move the bus; that another fellow came along and pulled up along side of his car and they both tried to push the bus but couldn't do it; that they tried to push the bus from each end but didn't succeed in moving it any; that Perkins afterwards told him he would have to get a truck and he and Perkins went back to Elkhart and got Donnelson and his gasoline truck; that as they came back he saw other headlights around there and thought something had happened; that on arriving he found that the Dodge car had run into the rear end of the bus but didn't notice whether it had struck the tail light or not; that both the car and the bus were locked together so firmly that it took the truck to pull the Dodge loose; that Donnelson hooked on the back end of the Dodge with a chain and pulled it down the road and put it on the other side of the pavement about 100 yards south and left it there for the time being; that after the accident he didn't pay much attention to the lights as he was busy directing traffic.

R. A. Donnelson testified that Byrne and the bus driver came for him to get him to pull the bus so it could be started; that as they drove north towards the bus he first saw it about a quarter of a mile ahead; that when they got there the Dodge car was driven into the back of the bus; that several of them tried to push the Dodge car back but could not push it by hand; that he then pulled it away with his truck and left it on the opposite side of the road 100 or 150 yards back of the bus; that when they first came up to the scene of the accident he noticed the wheels of the bus and the front wheels were just off the concrete and the back left wheel was about a foot on the slab; the right front wheel was not on level ground and had dropped into a hole about six or eight inches deep and just off the

edge of the shoulder just starting down the bank; that he didn't notice particularly about the lights on the bus; that he pulled the bus back on the road with his truck.

Jasper Bethany, one of the passengers on the bus, testified that after the bus had run out of gasoline he got out of the bus with the driver and they found there was no gas in the tank; that he noticed the position of the bus at that time and the rear end of the bus was on the pavement about a foot and a half to two feet; the front edge of the bus was just on the edge of the pavement; that the driver then went away to get gasoline; that they tried to start the bus and couldn't and another man came along and both cars tried pushing but didn't succeed in starting the bus; that they then went back for a truck and while he was gone the accident happened; that while he was sitting in the bus he noticed many motor vehicles passing by; that the collision jarred the bus and moved it around about a foot towards the pavement; that after the collision he noticed three green lights burning on the back of the bus; it was blowing but it wasn't raining; it wasn't very foggy.

Beatrice Heiskell, another passenger on the bus, after detailing the events up to the time the driver went back to Elkhart to procure the wrecking car, testified that after he left she got out of the bus and went to the back end and saw the three green lights and the red tail light burning; that at the time of the collision it was misting a little bit; that she was able to see cars up and down the road for a half a mile; that the collision caused a terrible jar and swung the car over on to the pavement in a westerly direction; that when she got out of the bus she noticed that the two wheels to the west were on the pavement and the rear left wheel was on the pavement about two feet.

It is clear that the manifest weight of the evidence shows that there were lights burning on this bus at

the time of the accident. It is also clear that it shows that motor cars approaching it from either direction did discover the bus within distances of 30 yards to half a mile and in ample time to turn around it and pass it without a collision and that the plaintiff by the exercise of ordinary care could have seen the bus in ample time to have avoided the collision. Under the circumstances shown by the evidence it becomes immaterial just to what extent the rear end of the motor bus extended over the west side of the pavement or whether the tail light was in fact lighted. The main fact is established by the manifest weight of the evidence that the bus was visible to anyone approaching from either direction at a sufficient distance so that it could be seen by the use of ordinary care in ample time to avoid colliding with it.

In the case of *Powers v. Standard Oil Co.*, 98 N. J. L. 730, the court said: "In this situation the truck was an immobile, inactive instrumentality, incapable in its inactive condition of perpetrating harm or damage. The fact that its reversed situation made its position upon the street at that point a violation of the traffic law, did not confer upon the truck either activity or force, so as to constitute it an active, efficient instrumentality for harm. Its violation of the traffic law created simply a super-added visible condition upon the street, which was perfectly obvious to the wayfarer, and imposed upon him or her, as a consequence, the necessity for corresponding care or precaution in the use of the highway. For the patent violation of the traffic law the remedy rested with the constituted municipal authorities, but its actual existence as an obvious fact to be reckoned with could not be ignored by the traveling public, and did not exempt the wayfarer from the exercise of the legal duty of due care under the existing condition. . . .

"In the case at bar it was unimportant whether the defendant's car rested legally or illegally upon the

street, since its obstruction to the vision of the crossing pedestrian, or to the driver of a moving car upon the roadway, would under the testimony be equally effective. In either event its impotence for harm or damage, as an innocuous immobile instrumentality, must be manifest, since in both situations it simply presented a patent condition, and not an operating, efficient or proximate cause which can be said to contain by its activity, that potentiality for harm or damage, which furnishes the test upon which the rule of liability in this character of tort feasance is predicated.''

In the case of *Frochter v. Arenholz*, 242 Ill. App. 93, it was held: ''An accidental break in machinery, or a defect in the mechanism or parts peculiar to the car, often gives the person operating it no choice about leaving a car standing in the road until a remedy for the mishap is found.''

This court held in *Collins v. McMullin*, 225 Ill. App. 430: ''The mere act of leaving an automobile standing on the proper side of a public road, however, cannot be regarded as negligence; it is a matter of common knowledge that it is not an infrequent occurrence to see an automobile standing in the public road; sometimes this occurs on account of an accidental break in machinery, or a defect in the mechanism peculiar to the car or because of a puncture in a tire, or because the car has run out of gasoline. Persons operating cars often have no choice about leaving a car standing in the road, until a remedy for the mishap is found.''

The conclusions we have come to as above expressed make it unnecessary to discuss the other errors presented. The judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*