Beulah R. H. Rhoden, Defendant in Error, v. Peoria Creamery Company, Plaintiff in Error.

Gen. No. 8,750.

Opinion filed December 22, 1934.
Rehearing denied and opinion slightly modified February 5, 1935.
Motion to vacate order denying and overruling rehearing denied and
opinion modified March 18, 1935.

EAGLETON & EAGLETON, of Peoria, for plaintiff in
error; GEORGE W. HUNT, of Peoria, of counsel.

Jesse Black, Jr., of Pekin, and Clarence W. Heyl, of Peoria, for defendant in error.

Mr. Justice Dove delivered the opinion of the court.

The defendant in error, Beulah R. H. Rhoden, recovered a judgment in the circuit court of Peoria county for $20,000 against the Peoria Creamery Company and the Peoria Cartage Company. From that judgment the Peoria Cartage Company has perfected an appeal to this court, and the Peoria Creamery Company has prosecuted this writ of error.

The declaration, as amended, consisted of three counts. In each count it was alleged, among other things, that the defendant in error was riding as the guest of Richard Vogel in his automobile on June 9, 1930, while he was driving it along State Highway No. 8; that the Peoria Creamery Company and the Peoria Cartage Company were each possessed of and operating a large truck upon said highway, both trucks proceeding in an easterly direction and immediately preceding the automobile in which the plaintiff was riding was the cartage company truck and ahead of it was the truck of the creamery company; that the driver of each of said trucks so negligently, carelessly and recklessly managed and controlled the same that by reason thereof the automobile in which plaintiff was riding struck the truck of the Peoria Cartage Company and as a result thereof defendant in error was seriously injured. The third count also alleged that no warning was given to the driver of the automobile in which plaintiff was riding and as a result thereof the collision occurred. To this declaration both defendants filed the general issue and the cartage company filed a special plea, denying that it was the owner of the truck and denying that the truck alleged to have been driven by its servants was in the care, custody or control of any agent or servant of the

cartage company. Upon these pleas issues were joined and a trial had, resulting in a verdict and judgment as hereinbefore stated.

The evidence discloses that defendant in error is a physician and surgeon, 40 years of age, a graduate of the University of Nebraska and of the University of Pennsylvania, and was, at the time of the accident, Assistant General Medical Superintendent of Bellevue Hospital in Brooklyn, New York. Richard Vogel is 40 years of age, lives at Berwyn, Illinois, and is a cousin of Dr. Rhoden. By previous arrangement, Mr. Vogel and his mother met Dr. Rhoden at Ames, Iowa, on June 8, 1930, drove to Des Moines, Iowa, and from there to Bowen, near Quincy, and the following day, June 9th, left Bowen in Mr. Vogel's five-passenger Oakland sedan, expecting to spend the night at Chenoa. They visited relatives and had supper at Eureka, leaving there between 7:30 and 8:00 o'clock. During the entire trip, Richard Vogel drove the car, and Mrs. Vogel and Dr. Rhoden occupied the rear seat, Dr. Rhoden sitting on the left-hand side, immediately behind the driver. After leaving Eureka, the car proceeded east toward El Paso on State Highway No. 8, which is a concrete pavement, 18 feet wide divided by a black line in the center and had traveled approximately 10 miles to the point of the collision. Approaching the place where the accident occurred the pavement is straight and level for approximately one mile in each direction. About 7:30 that same evening, a truck of the Peoria Creamery Company being driven by Eustace Hinderliter was proceeding easterly upon said highway, but due to a broken pin in its timer, stopped upon the east traffic lane of the slab, its north wheels being about two feet south of the black line which marked the center of the pavement. This truck and its contents had a gross weight of 23,350 lbs. As soon as the truck stopped, Hinderliter,

who was alone in the truck, went to the residence of Ivan Snow, some 500 feet away, and from there telephoned a mechanic at El Paso, John Sadler, to come out. About 15 minutes thereafter Sadler arrived and suggested that the truck be pulled to El Paso because, in the event the gear on the bottom of the distributor was found to be broken, they would have to get a new one. Upon examination of the distributor, however, Hinderliter, the driver of the truck, and Sadler, the mechanic, decided it could be repaired and went to a repair shop on the north side of the Snow home, leaving the truck unattended standing on the pavement. It was while they were there, engaged in repairing the timer, that the truck driven by Everett Bell, accompanied by John Butkovitz, referred to herein as the Peoria Cartage Company truck, which was also proceeding in an easterly direction, approached the creamery company truck and stopped, or was coming to a stop, between 30 and 50 feet west of the rear end of the Peoria Creamery Company truck. George Troye had passed through El Paso this evening at a little before 8 o'clock, driving alone in his Chevrolet coupe, going toward Eureka. As he approached the point of the collision, Bell and Butkovitz, in the cartage company truck, observed his approach, and in order to permit him to pass the creamery company truck, the driver of the cartage company truck was obliged to stop, or almost stop his truck, in order that Troye might proceed in his traffic lane on the north side of the black line. About this same time and while Sadler and Hinderliter were at the Snow residence making the repairs on the distributor, Mr. Vogel, driving the car in which Dr. Rhoden was a passenger, approached from the west, going in an easterly direction on the south traffic lane. According to the testimony of Mr. Vogel, he was proceeding on the right-hand side of the pavement up to a point within a few feet of the

rear end of the cartage company truck, when, in order to go around that truck, he pulled out to the left and entered the north traffic lane, left of the black line. About that time Mr. Vogel observed the Troye car approaching from the east, going in a westerly direction. Mr. Vogel further testified that when he first saw the Troye car, it was close enough to him that he knew if he went ahead his car and the Troye car would collide. Mr. Troye testified that he observed the Vogel car as it turned out into the westbound traffic lane, and he then turned his car over onto the shoulder and into the ditch north of the slab and Vogel swerved his car to the right in an effort to get back into his own traffic lane and thereupon his car struck the left rear corner of the cartage company truck, resulting in Dr. Rhoden being injured, to recover for which this suit was instituted.

Plaintiff in error contends that the evidence fails to disclose that it was guilty of any negligence which was the proximate cause of the injury; that the defendant in error was guilty of contributory negligence; that the doctrine of intervening cause applies and that the trial court erred in its refusal, at the close of all of the evidence, to direct a verdict for plaintiff in error; that the trial court erred in the admission of evidence; that erroneous instructions were given to the jury by the trial court; that prejudicial remarks were made by opposing counsel in their argument to the jury, and finally that the judgment is excessive.

Our statute makes it unlawful for the driver of a vehicle to stop the same on any durable hard-surfaced State highway, or allow it to stand in such position that there is not ample room for two vehicles to pass upon the road, except in case of emergency. Cahill's Illinois Revised Statutes, 1933, ch. 121, ¶ 161 (2). Plaintiff in error insists that as the undisputed evi-

dence is to the effect that there was a break in the operating machinery of the truck, therefore, an emergency existed as contemplated by the exception. This is true, but the negligence, of which defendant in error complains, is not that the timer or any part of the machinery of the truck broke or that the truck stopped on the pavement, but she insists that the negligence, of which she complains, consisted of plaintiff in error permitting this truck to remain as an obstruction after the emergency had passed.

The evidence discloses that about 15 minutes elapsed after the truck stopped before Sadler, the mechanician who came out from El Paso, arrived. Upon his arrival he parked his service truck on the shoulder of the road and inquired of Hinderliter if he knew what the trouble was. Hinderliter told him that it was in the distributor, and Sadler then said that they had better pull the truck into town, because in case the gear on the bottom of the distributor was broken, they would have to get a new one from some other place. Thereupon, Hinderliter suggested that they had better make a further examination and ascertain just what the trouble was. This they did, and discovered that the gear was not broken, but simply a small pin which held the gear to the shaft had been sheared off. The distributor was thereupon removed and Hinderliter and Sadler had taken it to the workshop at Snow's home and were working upon it there, when the accident occurred. Counsel for defendant in error in support of their contention that plaintiff in error permitted its truck to remain on the pavement after the emergency had passed, insist that Hinderliter refused to follow Sadler's suggestion to pull the truck into town and, therefore, must assume the liability occasioned by the truck being permitted to remain on the pavement. It is apparent, however, that the suggestion of Sadler was based upon the thought that the gear

in the distributor was broken and a new part would have to be procured, and when this was found not to be the case, both Sadler and Hinderliter left the car on the pavement where it had stopped and had been gone 10 or 15 minutes before the collision occurred.

In *Barnstable v. Calandro,* 270 Ill. App. 57, it appeared that the plaintiff was injured as a result of the car which he was driving colliding with the rear end of the truck of the defendant. The evidence disclosed that the truck developed some engine trouble and the driver elected to stop it after he had passed the crest of a hill, and a short way down the slope, driving it off the road at an angle of approximately 45 degrees with the front end pointed toward the embankment on the side of the road, but with its left rear wheel upon the pavement and the body of the truck extending several feet in the line of traffic. In overruling the contention that the driver of the truck was not guilty of negligence, the court said: "There was no occasion for the truck standing in that position. The truck had been traveling on a decline and could as easily have been coasted off from the cement, or it could have been removed from the highway entirely by the men who offered to haul it to Taylorville before the accident happened, but the appellant's servant declined the offered aid." In *James v. Motor Transit Management Co.,* 260 Ill. App. 246, it appeared that a Greyhound bus, while traveling on a paved highway, ran out of gasoline. The driver coasted as far as possible onto the shoulder of the road, the bus coming to a stop with its left rear wheel, at least, on the pavement. The head lights and tail lights were burning. After procuring gasoline, the driver again left the bus, as he was unable to start it, as the shoulders of the highway were soft and muddy. The driver left the bus the second time in order to procure a wrecker to pull the bus back on the pavement. While

the driver was gone the second time, the plaintiff came along in his car, traveling in the same direction, and collided with the rear end of the bus. In its opinion, the court cited *Frochter v. Arenholz,* 242 Ill. App. 93, where it is said: "An accidental break in machinery or a defect in mechanism or parts peculiar to the car, often gives the person operating it no choice about leaving a car standing in the road until a remedy for the mishap is found," and quoted from *Collins v. Mc-Mullin,* 225 Ill. App. 430, where it is said: "The mere fact of leaving an automobile standing on the proper side of a public road, however, cannot be regarded as negligence; it is a matter of common knowledge that it is not an infrequent occurrence to see an automobile standing in the public road; sometimes this occurs on account of an accidental break in machinery or a defect in the mechanism peculiar to the car, or because of a puncture in a tire or because the car has run out of gasoline. Persons operating cars often have no choice about leaving a car standing in the road, until a remedy for the mishap is found." In *Crawford v. Cahalan,* 259 Ill. App. 14, in discussing the effect of this statute, this court said: "The exigencies which will excuse a person from leaving a car on the public highway in violation of the statute are those which give no choice to the driver about leaving his car in that position."

What the *Barnstable, James, Frochter, Collins* and *Crawford* cases, *supra,* hold is that where one has no other choice except to leave his vehicle upon a portion of the paved road, there may be no liability by reason thereof, but in the instant case, the undisputed evidence is that it was suggested to Hinderliter by Sadler that the creamery truck be moved from the highway. This suggestion was made at least 20 minutes before the collision occurred. The means to move it was at hand. The service truck of Sadler was there at

the time the suggestion was made. The driveway to the Snow residence was approximately 100 feet east of the truck, and it was into this driveway that Sadler, using his service truck, moved the creamery truck immediately after the accident. It is true that the evidence does disclose that the creamery truck was properly lighted, both in front and in the rear, and the lights were burning at the time Hinderliter and Sadler left it in the road and took the distributor to the Snow workshop to repair it, but the very condition which did arise should have been anticipated by Hinderliter, and even though his truck was properly lighted, those lights would not be discernible by anyone approaching it from the west if another truck was obliged to stop in the rear of the creamery truck, as the presence of such other truck would prevent those lights from the creamery truck being seen. The question of negligence on the part of plaintiff in error was one of fact for the jury to pass upon under all the facts and circumstances as shown by the evidence, and in our opinion the evidence was such as required this question to be submitted to the jury. It is true that the breakdown of the truck of plaintiff in error had no connection with the fact that the cartage truck came along while it was there, nor did it have any connection with the Troye car approaching from the east, and these occurrences were independent of and had no connection with the presence of the creamery truck, but the reason the cartage truck was obliged to stop was because the creamery truck obstructed the pavement and the fact that the presence of the cartage truck or Troye car contributed to cause the injury is no defense to plaintiff in error if its negligence was an efficient cause and without which the injury would not have occurred. *City of Joliet v. Shufeldt,* 144 Ill. 403.

It is next insisted that defendant in error was guilty of contributory negligence. This question is also one

of fact for the jury to determine, and unless the conduct of defendant in error was clearly and palpably negligent, so that all reasonable minds would so pronounce it, the trial court would not have been justified in refusing to submit this question to the jury. Defendant in error was a guest of the driver of the car. His negligence, if any was shown, is not imputable to her. According to her testimony, the car in which she was so riding as a guest, from the time it left Eureka until the collision occurred was being driven between 25 and 30 miles per hour; that she was in the back seat, immediately to the rear of the driver and was looking, almost all the time, at the pavement, over the driver's shoulder, and could see 20 or 25 feet ahead; that she paid particular attention to the south traffic lane, and did notice the truck as it loomed up in front of the car in which she was riding. At the same time she observed it, however, she felt her car swerve to the left, out into the other traffic lane, and then observed, for the first time, the headlights of the Troye car approaching from the opposite direction. Her car then swerved to the right and at that instant there was a crash and she was thrown to the bottom of the car.

In *Christensen v. Johnston*, 207 Ill. App. 209, the court quoted with approval the following language from *Clarke v. Connecticut Co.*, 83 Conn. 219: "What conduct on the passenger's part is necessary to comply with his duty must depend upon all the circumstances, one of which is that he is merely a passenger having no control over the management of the vehicle in which he is being transported. Manifestly, the conduct which reasonable care requires of such a passenger will not ordinarily, if in any case, be the same as that which it would require of the driver. While the standard of duty is the same, the conduct required to fulfil that duty is ordinarily different because their

circumstances are different.'' A passenger riding as an invited guest in an automobile is only required to exercise such care as the exigencies of the situation require; in other words, such guest is bound to use such care and caution as a person situated in like circumstances would exercise. *Fredericks v. Chicago Rys. Co.*, 208 Ill. App. 172, and the fact that defendant in error did not do or say anything as the car approached the truck did not, in our opinion, show, as a matter of law, that she was not in the exercise of ordinary care for her own safety. The question whether she did or failed to do all that a reasonable person in like circumstances would have done was properly submitted to the jury by the trial court. *Waitrovich v. Black*, 254 Ill. App. 49; *St. Clair Nat. Bank v. Monaghan*, 256 Ill. App. 471.

It is next insisted by plaintiff in error that it is not liable as the proximate cause of the collision was not its negligence, but that it was due to the presence of the cartage truck, which was an independent intervening cause. In support of this contention the cases of *Illinois Cent. R. Co. v. Oswald*, 338 Ill. 270, *Hartnett v. Boston Store*, 265 Ill. 331, *Chicago Hair & Bristle Co. v. Mueller*, 203 Ill. 558, *Bowman v. Woodway Stores*, 345 Ill. 110, and a number of others are cited. In the *Oswald* case, *supra*, suit was instituted against the railroad company, the negligence charged being the emission of smoke by one of the engines of the defendant so dense that plaintiff was unable to see. She had been riding in an automobile and left it to see if her car had been damaged by another car running into it. While she was doing this, a third car came up, striking the car in the rear of the car in which the plaintiff had been riding, and causing it to strike the plaintiff. The court, in reversing the judgment of the trial court, held that the injuries sustained by the plaintiff resulted from her negligence. This

case is clearly distinguishable from the instant case and we have examined the other cases cited and in our opinion none of them sustains plaintiff in error's contention in this regard.

In *Fisher v. Chicago, R. I. & P. Ry. Co.*, 290 Ill. 49, the court said: "The rule of common law is that if an injury result from the negligent act of another, it is no defense that the negligence of a third person, or an inevitable accident or some inanimate thing, also contributed to cause the injury, if the negligence charged against the wrongdoer was an efficient cause and without which the injury would not have occurred." In *Illinois Cent. R. Co. v. Siler*, 229 Ill. 390, it is said: "In order to make a negligent act the proximate cause of an injury it is not necessary that the particular injury and the particular manner of its occurrence, could reasonably have been foreseen. (*City of Dixon v. Scott*, 181 Ill. 116.) If the consequences follow in unbroken sequence from the wrong to the injury without an intervening efficient cause, it is sufficient if, at the time of the negligence, the wrongdoer might, by the exercise of ordinary care, have foreseen that some injury might result from his negligence. (Citing cases.)" In *O'Connor v. Brower*, 262 Ill. App. 621, it is said (624): "The proximate cause of an injury is that act or omission which immediately causes and without which the injury would not have happened, notwithstanding other conditions or omissions concurred therewith (*Miller v. Kelly Coal Co.*, 145 Ill. App. 452); it must be that which in a natural and continued sequence, unbroken by any new and independent cause, produces the event and without which it would not have occurred (*Cleveland, C., C. & St. L. Ry. Co. v. Lindsay*, 109 Ill. App. 533). . . . It is not necessary that the person guilty of a negligent act or omission might have foreseen the precise form of the injury, but when it occurs it must appear that it was a natural and probable consequence of his negligence (*Seith v. Com-*

*monwealth Electric Co.,* 241 Ill. 252, 259), and the wrongdoer will be liable if the injury was such as a reasonably prudent man might, by the exercise of ordinary care, have foreseen would occur, although he might not have foreseen the particular accident that did occur. (*Hartnett v. Boston Store,* 265 Ill. 331; and *O'Rourke v. Louisville & N. R. Co.,* 197 Ill. App. 45, 52.)''

We have heretofore said that the trial court did not err in submitting the question of the negligence of plaintiff in error to the jury, and whether its negligence was the proximate cause of defendant in error's injury was also a question of fact to be determined by the jury. When the truck of plaintiff in error stopped, its driver or servants might reasonably have anticipated the approach of another car or truck from the west, as well as the approach of another car from the east, and might also reasonably have anticipated the approach of still another car from the west. This being true, the presence of all three at the time of the collision does not interrupt the connection between the original cause, which was the leaving of the creamery truck on the pavement after the means of removing it were at hand, and the injury which defendant in error sustained. If the creamery truck had not been standing on the pavement, the driver of the cartage company truck would not have been compelled to stop. If the cartage company truck had not stopped, Vogel would not have had to turn out at the time he did so, into the other traffic lane. If the Troye car had not been coming from the east, Vogel would not have been obliged to attempt to turn back into the south traffic lane. Therefore, the collision is directly traceable to the presence of the creamery truck upon the south traffic lane of the highway and had it not been there, the accident would not have occurred. In our opinion the court was warranted in submitting this question to the jury and the jury were, from the facts and cir-

cumstances in evidence, warranted in finding that the causal connection between the conduct of plaintiff in error and the collision was unbroken and that the proximate cause of the injury was the negligence of plaintiff in error.

It is next insisted that the trial court erred in its rulings upon the admission of evidence. Louis Merk was the treasurer and manager of the Peoria Cartage Company and he testified on behalf of the defendants that the cartage company was engaged in long distance hauling of freight and that the truck spoken of herein as the cartage company truck belonged to John Svob and that the arrangement which the cartage company had with him was to pay him 70 per cent of the gross receipts derived from the freight which he hauled and that the cartage company did not own the truck at the time of the collision. He further testified that the cartage company had had painted on the Svob truck the words, ''Peoria Cartage Company, No. 18, Long Distance Hauling, Peoria, Chicago, Springfield, Bonded and Insured.'' Without objection. Mr. Merk testified, on cross-examination, that the words ''bonded and insured'' meant that the truck owner was bonded and were put there ''to let the shipper know we were bonded and that their freight would be taken care of and in case of it being lost, it would be paid for.'' Over objection of counsel for the cartage company, this witness testified that insurance was carried to protect the freight from theft, fire or damage and to insure that collections would be turned in to the company. This evidence that the cartage company insured in its own name the freight which it carried was competent as tending to show that the cartage company was operating the truck at the time in question. *Hartley v. Red Ball Transit Co.,* 344 Ill. 534. There was no evidence here that there was any insurance protecting the cartage company from liability for damages resulting from the acts of the driver

and therefore the cases cited and relied upon by plaintiff in error are not in point. Furthermore, this testimony affected only the cartage company and not plaintiff in error.

It is next insisted that it was error to give instruction No. 21, which is as follows, viz.: "The court instructs the jury that on June 9, 1930, the statutes of the State of Illinois provided as follows: 'No driver of a vehicle shall stop the same on any durable hardsurface State Highway, or allow it to stand in such position that there is not ample room for two vehicles to pass upon the road, nor shall any person unload his cargo or transfer it from one vehicle to another, except in case of emergency, upon such highway.'" This instruction is in the language of the statute. It is true that the phrase "nor shall any person unload its cargo or transfer it from one vehicle to another" has no application whatever to the facts in this particular case, and those words should have been eliminated. Counsel for plaintiff in error insists that the instruction was misleading because it did not tell the jury what those emergencies might be, which would excuse the stopping of a vehicle on the highway. It was a question of fact for the jury to determine whether the emergency which caused the creamery company truck to stop existed at and just before the time of the collision. The statute not only prohibits the driver to stop, but also prohibits him from allowing his vehicle to stand on the pavement and for this reason we do not believe that, in this case, the giving to the jury of an instruction couched in the words of the statute itself was improper; *Leideck v. City of Chicago*, 248 Ill. App. 545.

Instruction No. 22 is: "The court instructs the jury that on June 9, 1930, the statutes of the State of Illinois provided as follows: 'No driver of a vehicle shall suddenly stop, slow down or attempt to turn around, without first signaling his intentions with outstretched

arm or otherwise to those following closely in the
rear.'" The phrase "or attempt to turn around"
has no application whatever to the facts as they ap-
pear in the record of this case, and those words should
have been eliminated and so far as plaintiff in error
was concerned have no application, but the cartage
company was a defendant in the trial court and the evi-
dence in this record warranted the giving of this in-
struction, and the jury must have understood it as
applying to the facts as the evidence disclosed the
facts to be and plaintiff in error was, in our opinion,
in no way prejudiced by the giving of this instruc-
tion.

Instruction No. 41 is as follows: "The court further
instructs the jury that if you find from the greater
weight of the evidence that the plaintiff has proved
her case and has sustained damages, then to enable
the jury to estimate the amount of damages to the
plaintiff for injuries to her person, if any has been
shown, it is not necessary that any witness should
have expressed an opinion as to the amount of such
damages, but the jury themselves must make such
estimate from the facts and circumstances in proof,
and by considering them in connection with their
knowledge, observation and experience with the ordi-
nary affairs of life." The criticism directed against
this instruction is that it specifically directs the jury
to take into consideration knowledge acquired from
observation and experience in arriving at the amount
of damage. What this instruction did was to inform
the jury that if the jury find from a consideration of
the evidence that the plaintiff was entitled to recover,
it was unnecessary to have any witness express an
opinion as to the amount of such damages and we
are unable to understand how a person, when he be-
comes a juror, could be expected to not bring to the
consideration of a case, upon which he is deliberating,
his knowledge, observation and experience with the

ordinary affairs of life. The instruction has been frequently approved, and it was not error to give it. *North Chicago St. R. Co. v. Fitzgibbons,* 180 Ill. 466; *Reynolds v. Alton, Granite and St. Louis Traction Co.,* 194 Ill. App. 87; *Richardson v. Nelson,* 221 Ill. 254; *McDonell v. Lake Erie and Western Ry. Co.,* 208 Ill. App. 442.

The court gave 31 instructions offered by the defendants below, and there is no merit in counsel's contention that it was error to refuse instruction No. 5. Given instruction No. 31, as well as several others, fully covered the subject matter embraced in this refused instruction.

The prejudicial argument which is complained of was the statement made by counsel for defendant in error that the reason the driver of the creamery truck would not let Sadler tow his car off the road was because he wanted to save the towing charge, that the driver of the creamery truck was indifferent to the safety of anyone on the road because he was either in a hurry or else didn't give a damn, which counsel went on to explain was what "we say to people who simply don't care." We do not think the use of the word damn was necessary in this argument. There is certainly some other word in our language almost, if not quite, as expressive of the thought desired to be conveyed and upon another trial, counsel will refrain from violating the proprieties of his profession. However, other than the use of this objectionable word, we are unable to say that the argument was unwarranted.

Inasmuch as this judgment must be reversed and the cause remanded, it will be unnecessary for us to consider the remaining error relied upon, which is that the judgment is excessive.

In the instant case, the negligence which defendant in error insists the cartage company was guilty of was

the failure of its driver to signal that he was going to bring his truck to a stop and his failure to have the lights burning on the rear of his truck. We have read this record with care, and the evidence discloses that the collision occurred a very few minutes after 8 o'clock. While the exact time of the collision is not material, it may be noted that those in the Vogel car insist it was dark and the evening murky and the visibility poor. The weight of the evidence is, however, that the pavement was dry, the atmosphere clear, the visibility good and the moon shining, although earlier in the day and prior to 5 o'clock there had been some rainfall. The sun set at 7:29 o'clock. Harvey W. Malcolm and his wife Martha resided not to exceed a thousand feet from the place where the collision occurred. Mrs. Malcolm observed the cartage truck as it approached the creamery truck, and she also saw the Vogel car as it proceeded eastward and heard the crash occasioned by the collision. Both of these witnesses are disinterested, and their testimony that rear dome and tail lights on the cartage truck were lighted and burning must not be overlooked. Furthermore Bell and Butkovitz testify that the front and rear dome lights were on the same circuit, operated by the same switch while the headlights and tail lights were on another circuit, that the headlights were burning before, at the time of, and after the accident, that immediately following the collision they both went to the rear of the cartage truck and at that time the tail and rear dome lights were burning. Troye, the driver of the west-bound car, testified that as he approached the cartage truck he saw that its headlights were lit. Immediately after the crash, Hinderliter came out of the shop where he and Sadler were repairing the broken part of the creamery truck and he observed the lights burning on the cartage truck, the front dome lights being green and the rear ones red. Sadler and Snow also each testified

that he saw the headlights on the cartage truck burning when he looked immediately after the crash. If the headlights were burning, the tail lights were also necessarily burning, as they were on the same circuit. E. J. Joosten, driving a Chevrolet car, accompanied by his wife, left Eureka about 8 o'clock, driving east, and both Mr. and Mrs. Joosten testified that they saw the cartage truck when they were within a quarter. of a mile of it and observed its rear lights, which were burning. The. driver of the cartage truck testified that he observed in his mirror the Vogel car approaching in the rear approximately 500 feet away and he and Butkovitz both testified that Butkovitz turned the switch which controlled the dome lights on and off in order to attract the attention of those riding in the Vogel car.

That the cartage company is guilty of the negligence charged depends solely upon the evidence of Richard Vogel and his mother, who testified that the rear lights on the cartage truck were not burning. Dr. Rhoden, the defendant in error, was continuously watching the pavement, directing her eyes on her own traffic lane, being able to see, according to her testimony, only 20 or 25 feet ahead of the car in which she was riding and consequently she did not observe the truck until an instant before the collision. While ordinarily the jury are the judges of the weight of the evidence, they are not the final judges, and when from a consideration of all the evidence it is apparent that their verdict is manifestly against the weight of all the evidence, it is the duty of the trial court to set aside their verdict. *Donelson v. East St. Louis & Suburban Ry. Co.*, 235 Ill. 625. We are clearly of the opinion that the weight of the testimony is that the cartage company is not guilty of the negligence charged and for this reason the court erred in not granting the motion for a new trial.

Under the practice which obtained prior to January 1, 1934, this judgment being a unit as to both the creamery company and the cartage company could not be affirmed as to one and reversed as to the other. *Hays v. Thomas,* 1 Ill. (Breese) 136; *Livak v. Chicago & Erie R. Co.,* 299 Ill. 218; *Freeman v. Dixon,* 233 Ill. App. 196; *Christensen v. Johnston,* 207 Ill. App. 209; *McDermott v. A. B. C. Oil Burner Sales Corp.,* 266 Ill. App. 115; *McDonald v. Wilkie,* 13 Ill. 22. Under the Civil Practice Act of 1933 (Cahill's Illinois Revised Statutes, 1933, ch. 110, ¶ 220, sec. 92), it would not be improper for this court to reverse the judgment against the cartage company and affirm it as to the creamery company. *Fogel v. 1324 North Clark St. Bldg. Corp.,* 278 Ill. App. 286; *Adkins v. Strathmore Co.,* 278 Ill. App. 183.

Under all of the facts as disclosed by this record, however, we believe that this case should be submitted to another jury.

The judgment of the circuit court is therefore reversed and the cause remanded.

*Reversed and remanded.*