**Frank E. Wilson, Jr., and Grace McNally, Appellees, v. Arthur S. Nichols, Appellant.**

**Gen. No. 41,631.**

Heard in the third division of this court for the first district at the February term, 1941. Opinion filed June 25, 1941.

Rowe & Bailey, of Chicago, for appellant; Joseph A. Bailey and Henry H. Caldwell, both of Chicago, of counsel.

Klein, Harrow & Wilkinson, of Chicago, for appellees; Arthur W. Klein and John O. Wilkinson, of counsel.

Mr. Justice Denis E. Sullivan delivered the opinion of the court.

Defendant Arthur S. Nichols brings this appeal from a judgment entered in the municipal court in favor of plaintiffs for the sum of $365. The action was one to recover for damages to an automobile owned by Frank E. Wilson, Jr., one of the plaintiffs, and to recover damages for personal injuries alleged to have been sustained by Grace McNally, the other plaintiff herein. Defendant's motion for a new trial was overruled, hence this appeal.

In plaintiff's statement of claim filed October 31, 1938, plaintiff Frank Wilson alleges that he was the owner of an automobile being driven in a northerly direction on Harlem avenue in the vicinity of 66th street in the city of Chicago, on or about January 23, 1938; that said plaintiff and his passenger were both in the exercise of reasonable care for their own safety; that the defendant Arthur Nichols was operating an automobile on the viaduct and that his negligence consisted in unlawfully parking his automobile on the viaduct in violation of section 90 of the Uniform Act regulating traffic; that defendant unlawfully parked his automobile without lights and unlawfully parked his automobile at an angle so that the lights were not visible; that he brought his automobile to a stop without

warning or signal and that he wilfully and wantonly drove his automobile into the automobile of plaintiff Frank Wilson; that as a result of defendant's negligence the automobile of said Frank Wilson was damaged and the passenger Grace McNally received personal injuries.

Defendant's answer denies that the plaintiffs were in the exercise of due care and caution for their safety; denies that he was guilty of any negligence or carelessness in operating or maintaining his automobile; denies that plaintiff's automobile was damaged or that the plaintiff Grace McNally was injured.

The trial court found that Arthur S. Nichols is guilty in the manner and form as charged in plaintiff's statement of claim and assessed plaintiffs' damages at the sum of three hundred forty ($340) in favor of the plaintiff Frank E. Wilson, Jr.

The court also found that the defendant Arthur S. Nichols is guilty in the manner and form as charged in plaintiffs' statement of claim and assessed plaintiffs' damages at the sum of $25 in favor of Mrs. Grace Wilson, Jr. [who was Grace McNally at the time suit was instituted, but who has since married the plaintiff Frank E. Wilson, Jr.].

Plaintiffs' theory of the case is that the statement of claim is grounded upon violations of the Uniform Act regulating traffic upon the highways of this State; that in said statement of claim it is alleged that the defendant unlawfully parked his automobile upon a viaduct; that defendant unlawfully parked his automobile upon a viaduct without lights and he unlawfully parked his automobile upon the viaduct at an angle so that the lights on said automobile were not visible; that defendant brought his automobile to a sudden stop without warning or signal, and, that he wilfully and wantonly drove his automobile into the automobile of the plaintiff Frank E. Wilson, Jr.; that the statement of claim also alleges that as the result of the al-

leged acts of negligence the plaintiff, then Grace McNally, was injured about her person.

Defendant's theory of the case, as set forth, is that it is the contention of the defendant that there was a failure of proof as to each allegation of negligence and that there was a fatal variance between the proofs and the findings of the court.

Plaintiff Frank E. Wilson, Jr., testified that the collision took place on January 23, 1938, about 2:00 o'clock in the morning on the Harlem avenue bridge just south of 63rd street; that he was driving a Ford coupe; that the place where the accident occurred is a viaduct which is shaped like an "S"; that the length of the viaduct is about 4 blocks long, from the beginning of the incline to the other side and it is a 4-lane bridge; that there is a painted line between the northbound and southbound lanes and that line extends the entire length of the viaduct; that there are two lanes of traffic in the northbound portion; that the grade of the viaduct is about 25 or 30 percent grade; that there is a wire fence along the roadway which starts at the bottom of the incline and goes up to the bridge top and on the bridge there is a cement railing.

Further testifying said plaintiff stated that the collision occurred approximately three-fourths of the way up the incline or the approach to the bridge; that the collision did not occur on the bridge proper; that the collision occurred approximately 75 feet from the bridge proper; that the other plaintiff was in the car with him; that they were returning from a social call and were bound for Grace McNally's home in Summit, Illinois; that the weather was foggy and the roads were slippery; that both windows to their car were open and he was sticking his head out of the window on his side of the car and his companion was sticking her head out of the window on her side of the car so "that they could watch"; that he had his lights on at the time; that the condition of the road was slippery

as it had been drizzling all day and it had turned cold and frozen and was very foggy; that the visibility was very poor.

Further testifying said plaintiff stated that at the time he entered the approach there was no traffic directly ahead of him; that he first saw a car ahead of him in the northbound lane when he was within 10 feet of defendant's car; that at that time his, plaintiff's, car was approximately three-quarters of the way up the incline; that plaintiff's car was at that time in the inner lane and the car ahead of him was parked crosswise on a right angle to plaintiff's car and across the two northbound lanes, it was straddling the dividing line in said two lanes of traffic; that at the time plaintiff first saw defendant's car it was stopped facing in a westerly direction, or, because of the angle of the road, more to the northwest; that he could see no lights on defendant's car; that when he saw defendant's automobile he tried to stop by putting on his brake and pulling to the right as he was afraid to go over on the other lane; that after he turned his car to the right he bumped into defendant's car; that the front of his, plaintiff's, car hit defendant's left fender and the left panel of the body of his car; that at that time they were still in the right or northbound lane of traffic; that defendant's car was facing west at the time of the collision and was to the right of the center line of the highway.

Further testifying said plaintiff stated that after he hit defendant's car, he, the plaintiff, stopped and another car bumped into the back of his car; that said plaintiff and defendant got out of their automobiles and Mr. Nichols said, ''Well, I am sorry. It seemed like it was unavoidable.''; that defendant handed plaintiff his card and that was all that was said; that defendant did not tell plaintiff why his car was crosswise on the northbound lane; that plaintiff's companion was knocked to the floor of his car at the time of

the impact and that at the time of the collision he, plaintiff, was not traveling over 15 miles an hour; that after the impact defendant's car veered over a little more to the northwest and plaintiff's car turned right along side defendant's; that they were then both facing the same direction.

Further testifying said plaintiff stated that after he got out of his car he did not see any other car stopped or moving in front of defendant's car; that after he talked with defendant he, the plaintiff, said he had better summon the police and that the defendant said, "Well, come on. Get in my car and I will take you to town so you can call the police."; that they got into defendant's car and he started to back up against the fence protecting the embankment; that plaintiff's companion yelled that she wanted to get out of the car, so they jumped out and plaintiff had to flag a car down to call the police.

On cross-examination said plaintiff testified that there was not much damage done to his car when he hit defendant's car; that his, plaintiff's front bumper came into contact with defendant's left rear fender; that plaintiff and his companion were still in plaintiff's car when another automobile hit plaintiff's automobile in the rear and knocked plaintiff's automobile up against defendant's automobile again; that after the second collision plaintiff and his companion Grace McNally got out of plaintiff's automobile; that plaintiff and his companion then went over to the shoulder of the road and that the defendant also went over there and that after that plaintiff's automobile was struck by another car; that six or seven automobiles ran into his, plaintiff's, car after the collision with defendant's car and his car was also struck by an automobile going south.

The defendant testified that on the night of the accident he was driving a Buick automobile and he and his wife were coming from Gary, Indiana; that the acci-

dent took place between 2:00 and 2:30 a.m.; that they proceeded north on Harlem avenue and the pavement was a solid sheet of ice; that the atmosphere was foggy, the visibility poor and there was a mist or sleet which froze on the windshield of the car and on the running board; that as he proceeded north on Harlem avenue he was driving about 15 or 20 miles an hour as he approached the bridge over the Chicago & Outer Belt Railway line; that as he approached the bridge there was a truck driving in front of him; that he noticed a red light of a truck ahead of him; that the truck was proceeding in the same direction and as it turned with the road to the left to begin the ascent of the incline, it flashed its spotlights on; that at that time he, the defendant, applied his brakes normally and his car skidded, first it skidded to the left across the road and then it returned to the right side of the road with the front part of the automobile on the shoulder; that it had rebounded about a foot or two but not much more from the fence on that side of the road; that his car was not only skidding but it was also spinning because the road sloped at that point and was covered with ice; that the car turned around more than once and when it stopped its nose was facing northeast; that the front end of his car was two or three feet from the guard rail and about five feet of the length of his car was in the northbound traffic lane; that his car was facing directly east after the time it skidded.

Further testifying defendant stated that after his car skidded his wife became unnerved and he stopped and hesitated for a minute, thinking as to whether the safest thing to do would be to get out of the car or whether he and his wife should stay there; that they were both very confused and had stopped there about 30 seconds to a minute before the collision with plaintiff's car; that defendant's right rear fender was struck and the left side of defendant's car was not damaged at all; that when defendant's car was struck

by plaintiff's car, defendant got out and assisted his wife and took her behind the guard rail and stayed there himself; that at that time, for possibly 3 to 10 minutes, there were several more collisions and cars piling up on the icy pavement; that one of the automobiles struck his car but that defendant's automobile was not struck by any automobiles that were going south; that before his car was struck by plaintiffs' car his, defendant's, lights were burning; that after the collision defendant was able to drive his car away and the lights were still burning.

On cross-examination defendant stated that when he was following the truck at a distance of from 50 to 150 feet and the truck was flashing for a stop, that he, the defendant, was driving at the rate of 15 or 20 miles an hour; that when he saw the signal for a stop he applied his brakes normally and his car skidded; that he did not have a collision with the truck; that when he skidded his car went about one and three-quarters times the distance of the roadway; that he did not think he skidded very far forward; that his car had two impacts with barriers and was crosswise on the road; that it was impossible for him to drive his car ahead because of the fact that there was a steel barrier located there.

Counsel for the respective parties have stipulated that the damage to plaintiff's automobile amounted to $340.

We have set out the testimony of plaintiff and defendant in detail, even at the expense of prolixity, in an endeavor to present a word picture of the unusual situation which existed at the time of the collision herein involved, and because of which defendant is charged with negligence. Plaintiff relies on the assertion that in some way defendant violated the statute. Chapter 95½, par. 187, sec. 90, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 85.219], reads as follows:

"(a) No person shall stop, stand, or park a vehicle, except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or traffic control device, in any of the following places: . . .

"13. Upon any bridge or other elevated structure upon a highway or within a highway tunnel; . . .

We do not think defendant's automobile was parked in violation of the statute. The roadway was slippery and defendant's car had skidded into that position. Visibility was almost zero as it was foggy and misty and control of the automobile was rendered very difficult, if not impossible, and the only feasible thing to have done was to stop the automobile, if possible. We believe that ordinary care and caution would naturally require that one endeavor to bring the automobile to a complete stop under the circumstances as heretofore described. We have been unable to find any evidence of negligence on the part of the defendant. The truck which was proceeding him gave a stop signal, so he naturally applied his brakes to avoid crashing into the truck. Defendant's car remained at the place to where it had skidded about 30 seconds or a minute, when it was struck by plaintiff's car. Defendant was a victim of the elements which he was trying to overcome and we do not think he could be charged with negligence because of the consequences. Many cases similar to this have been passed upon by the courts of this State.

In *James v. Motor Transit Management Co.*, 260 Ill. App. 246, the defendant's bus could not be moved because of mud. The weather was foggy and the plaintiff was driving at a speed of about 25 miles an hour and could see no more than 30 feet ahead of his car. He did not see the bus until his car was about 30 feet away. At page 258, the court said:

"This court held in *Collins v. McMullin*, 225 Ill. App. 430: 'The mere act of leaving an automobile standing

on the proper side of a public road, however, cannot be regarded as negligence; it is a matter of common knowledge that it is not an infrequent occurrence to see an automobile standing in the public road; sometimes this occurs on account of an accidental break in machinery, or a defect in the mechanism peculiar to the car or because of a puncture in a tire, or because the car has run out of gasoline. Persons operating cars often have no choice about leaving a car standing in the road, until a remedy for the mishap is found.' "

The instant case presents a chain of circumstances which resulted in the collision which was unavoidable. We cannot find from the evidence or the law relating thereto, that the defendant is any more guilty than is the plaintiff in this case. *Wedig v. Kroger Grocery & Baking Co.,* 282 Ill. App. 370; *Johnson v. Kushler,* 269 Ill. App. 553. It cannot be said that the defendant in the instant case "parked" his automobile on the road, it was only standing there because the car had skidded on the icy pavement. We cannot find there was sufficient evidence to justify the finding and judgment of the trial court.

For the reasons herein given the judgment of the municipal court is reversed and judgment is entered here for costs against plaintiff.

*Judgment reversed and judgment here.*

BURKE, P. J., and HEBEL, J., concur.